[Filed February 1, 1892.]

## S. P. MACKEY v. J. H. SMITH ET AL.

STATUTE OF FRAUDS—DEBT OF ANOTHER—ORIGINAL PROMISE.—Where the credit is given entirely to one party and the sale of goods is in fact to that party, though they are delivered to and used by another party, the statute of frauds does not apply; and in such case the oral promise of the first party is not an agreement to answer for the debt of another, but an original promise, upon which a cause of action may be alleged and proven without a writing.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.    Affirmed.

*Paxton & Paddock,* for Appellants.

If the person for whose use the goods are furnished be at all liable, any promise by a third person to pay therefor must be in writing, as it is within the statute of frauds. (*Wallace* v. *Wortham,* 25 Miss. 119; 57 Am. Dec. 197; *Leland* v. *Creyon,* 1 McCord, 100; 10 Am. Dec. 654; *Andre* v. *Bodman,* 13 Md. 241; 71 Am. Dec. 628; *Whittmore* v. *Wentworth,* 76 Me. 20; *Willard* v. *Bosshard,* 68 Wis. 454; *Gump* v. *Halberstadt,* 15 Or. 356; Reed, Stat. Frauds, § 31; Browne, Stat. Frauds, § 197; 8 Am. & Eng. Enc. Law, 678; *Packer* v. *Benton,* 35 Conn. 343; 95 Am. Dec. 246; *Cole* v. *Hutchinson,* 34 Minn. 410; *Studley* v. *Barth,* 54 Mich. 6; *Morrissey* v. *Kinsey,* 16 Neb. 17; *Bates* v. *Donnelly,* 57 Mich. 521; *Langdon* v. *Richardson,* 58 Iowa, 610; *Welch* v. *Marvin,* 36 Mich. 59; *Clay* v. *Walton,* 9 Cal. 329; *Harris* v. *Frank,* 81 Cal. 280.)

The mere fact that the goods sold by Mackey to Malone were used by Malone in doing the work which he had contracted to do for them, does not constitute a consideration for the alleged promise of defendants.    (*Ellison* v. *Jackson, etc. Co.* 12 Cal. 553.)

The fact that Mackey may have parted with the goods by reason of the alleged promise, is not a consideration to Smith, and will not support the oral promise.    (*Mallory* v. *Gillett,* 21 N. Y. 412; *Nelson* v. *Boynton,* 3 Metc. 396; 37 Am. Dec. 148; *Wills* v. *Brown,* 118 Mass. 138; *Furbish* v. *Goodnow,* 98 Mass. 296; *Robinson* v. *Gilman,* 43 N. H. 491.)

*Gilbert & Snow,* for Respondents.

The law is well settled that a sale of goods to one at the request and on the sole credit of another, renders the promise to pay an original promise and takes the case out of the statute of frauds. (*Hartley* v. *Varner,* 88 Ill. 561; *Morris* v. *Osterhout,* 55 Mich. 262; *Calahan* v. *Ward,* 45 Kan. 545; *Baldwin* v. *Hiers,* 73 Ga. 739; *Clark* v. *Jones,* 87 Ala. 474; *Lance* v. *Pearce,* 101 Ind. 595.)

As to the charge on the books, that is sufficiently explained by the evidence; and the courts have always held that while such charges are evidence against the plaintiff, they may be explained, and it is for the jury to say to whom credit was given. (*Larsen* v. *Jensen,* 53 Mich. 427; *Burkhalter* v. *Farmer,* 5 Kan. 477; *Champion* v. *Doty,* 31 Wis. 100; *Maurin* v. *Fogelberger,* 37 Minn. 23; 5 Am. St Rep. 814; *Walker* v. *Richards,* 41 N. H. 388; *Hazen* v. *Bearden,* 4 Sneed, 50; *Barrett* v. *McHugh,* 128 Mass. 165.)

Where the leading object of the promissor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, the promise is not within the statute of frauds and need not be in writing. (*Hind* v. *Holship,* 2 Watt, 104; 26 Am. Dec. 107; *Leonard* v. *Vredenberg,* 8 Johns. 28; *Greene* v. *Burton,* 59 Vt. 423; *Lemmon* v. *Box,* 20 Tex. 329; *Katzmeyer* v. *Ennis,* 27 N. J. L. 376; *Templeton* v. *Bascom,* 33 Vt. 133; *Hedges* v. *Strong,* 3 Or. 18; *Emerson* v. *Slater,* 22 How. 43; *Fitzgerald* v. *Morrissey,* 14 Neb. 198; *Willis* v. *Cutler,* 61 N. H. 405; *Clifford* v. *Luhring,* 69 Ill. 401.)

LORD, J.—The defendants were partners. The action is brought by the plaintiff to charge the defendants upon an oral promise, alleged to have been made by them, to pay him for goods and merchandise he supplied one Malone, a sub-contractor of the defendants in the construction of a certain railroad. After issue was joined upon the several causes of action alleged, the court referred the case to a referee to take the testimony and report his findings of fact

and conclusions of law. On the trial before the referee, after the plaintiff had rested, the defendants moved for a nonsuit, which being overruled, they declined to offer any evidence. The referee found against the plaintiff as to ninety dollars and seventeen cents already due to plaintiff from Malone when the alleged promise was made, but found in favor of the plaintiff as to all the goods and merchandise supplied Malone after a certain date specified.

The defendants excepted to the referee's findings against them, and renewed their motion for a nonsuit upon the trial before the court; but the court denied the motion and confirmed the report, whereupon judgment was rendered in favor of the plaintiff from which the defendants bring this appeal.

The main question presented here is, whether the alleged oral promises are within the statute of frauds. The evidence shows that the defendants were engaged in constructing a railroad under a written contract which authorized them to sublet portions of the work; that Malone was a sub-contractor for a small portion of it, which was to be completed about the first day of January, 1891; that among other things, the agreement with him provided that the defendants might, whenever they deemed it "proper or expedient so to do, pay to the laborers, or other persons employed by said Malone, or who may have furnished supplies, or materials for said work, out of any moneys due on monthly or other estimates, any sums due for labor, services, supplies or materials under this contract, and charge the same to the party of the first part as so much paid on this contract." It seems that Malone began work some time about the first of September, 1890, under this contract with the defendants; that he bought and paid for the goods or supplies delivered to him by the plaintiff during the month of September, but that from the first to the seventh of October, the plaintiff had sold him ninety dollars and seventeen cents' worth of goods, for which he had not paid; that on the last-named date, the plaintiff, mis-

trusting the ability of Malone to pay the sum last mentioned, and being unwilling to extend him further credit, sought the defendant Smith, for the purpose of ascertaining whether they, the defendants, would become responsible for the account, and to make arrangements for future supplies.

The plaintiff testifies: "I called there to find out from Mr. Smith whether he would be responsible for the supplies furnished Malone. I had become somewhat apprehensive, thinking the account was too large for Malone to take any chances on. I went to Mr. Smith and asked him if he would become responsible for these supplies, and he said that he would become responsible for these goods on condition that I was to continue selling some goods along. They did not want the supply shut off on Malone. * * * He said he would be responsible for the goods that had been bought, and that he would pay all bills contracted by Malone until he should come down the line, and not stop the supplies, because he wanted the work to go on. He said he would come down the line soon, probably next week. 'I will come to your store and see you there.'"

Mr. A. A. Lindsley, who was present at this interview, testifies: "Mr. Mackey introduced me to Mr. Smith. Mr. Mackey explained to Mr. Smith that he had called to see him in reference to Malone's account. He said he was furnishing supplies to Malone for his use as railroad subcontractor, and that he was unwilling to trust Mr. Malone further unless Mr. Smith would guarantee his account. Mr. Smith said he would be responsible for all Mr. Malone had purchased up to date on condition that Mr. Mackey should not shut down his supplies immediately; that he would be over the line in a few days, probably in the following week, and would arrange with Mr. Mackey then in regard to future supplies; that in the meantime Mr. Mackey should continue to supply Mr. Malone, and that he, Mr. Smith, would be responsible for what he should furnish Mr. Malone until such date as he should call. Mr. Mackey says: 'But I may not see you.' Mr. Smith replied: 'I

will come to your store.' Mr. Mackey asked: 'You will
be responsible, then, for what I furnish Mr. Malone until I
see you at that time.' Mr. Smith said he would."

In pursuance of this conversation and relying upon the
promise of the defendants, the plaintiff continued to furnish
supplies daily to Malone until about the twentieth of
October, when, hearing that Smith had been down the line
some days before, but not having called as promised, he at
once cut off supplies from Malone, and refused to let him
have any more goods. Near the last of October, Smith rode
up to the store on horseback, when the plaintiff testifies to
the following conversation: "I asked how about Malone's
bill. It was an understood thing that he was to make some
arrangement when he came down, and he said let him
have such supplies as he needed, and he would pay the
bills; that it was all the same as his own; he had to pay them
anyway."

Another witness by the name of George Laws, who was
present at this conversation, testifies: "Mr. Smith rode up
to the porch. Mr. Mackey came out and asked him how
about Malone's bills; if he would stand good for the bills,
and he said he would. He said let Mr. Malone have any-
thing he wanted; he would pay the bills the same as
his own; that he had to pay them anyway. He said let
Mr. Malone have anything he wanted out of the store."
Mr. Hall, the clerk, testifies: "After Mr. Smith had left,
Mr. Mackey came into the store and told me to continue
letting Malone have supplies; Smith would be responsible."
In this connection, Mr. Hall also explained how it was that
charges to Mr. Malone were entered on the blotter after
such conversations, to the effect that it was to keep the
accounts from getting mixed between what was known as
the Anderson and Malone camps.

The referee found that the supplies furnished and repre-
sented by the charge of ninety dollars and seventeen cents
were sold to M. F. Malone, and solely upon his credit; but
those furnished and represented by the subsequent charges

were furnished him upon the defendants' promise, and that the credit was given solely to them. The referee in this case stands in the place of the jury, and if the credit were given to the defendants alone after October 7th, as he has found, the finding is based upon sufficient evidence and cannot be disturbed.

The contention for the defendants is, that the promises of the defendant Smith to pay for the supplies delivered to Malone, after October 7th, was void under the statute of frauds, because they were not in writing. Our inquiry then is, whether the undertaking of the defendants was a collateral or an original promise. In *Cahill* v. *Bigelow*, 18 Pick, 369, SHAW, C. J., states as the test whether the promise is collateral when it is made before the credit is given: "Was the credit given to the person receiving the goods? If it was, then such promissor is a guarantor only, undertaking to pay another's debt. If no credit were given to the person receiving the goods, then the promissor is himself debtor for goods sold to him and delivered to another by his order."

In 3 Kent's Com. 123, it is said: "If the whole credit be not given to the person who comes in to answer for another, his undertaking is collateral, and must be in writing." And said BELL, C. J.: "If the credit were given entirely to the defendant, and it was agreed that he alone should be responsible, and in fact the sale was to him, though the goods were delivered to, or for the use of another person, the statute does not apply; and the defendant is liable on his parol agreement, under a common count for goods sold and delivered." (*Walker* v. *Richards*, 41 N. H. 390.) So that if the plaintiff furnished the supplies to Malone on the sole credit of the defendants, the debt created thereby was the debt of the defendants, and the statute does not apply; and he can maintain this action on their oral promise, or agreement to pay for them. But in determining to whom the credit was given as purchaser of the goods, we must look to the circumstances of the transaction: what took place

between the parties in the light of all the facts. In this way we may get at the intention of the parties, and ascertain to whom the credit was given, or who of them should be primarily liable for the goods.

The evidence shows that the plaintiff, mistrusting the ability of Malone to pay for the goods and supplies which he had sold and delivered to him, and being unwilling to give him any further credit, sought the defendants for the purpose of ascertaining whether they would be responsible for what Malone already owed him, and make any arrangements for future supplies. The conversation already adverted to, states in substance that the defendants would become responsible for the amount of the goods sold and delivered to Malone on the condition that the plaintiff would continue to furnish him with supplies, and not shut down on him. The promise of defendants to become responsible for the goods supplied Malone, was collateral, as they were furnished on his sole credit; and not being in writing, it was void, under the statute of frauds. But the promise of the defendants that they would pay for and be responsible for all supplies furnished to Malone, or bills contracted by him, until their Mr. Smith should come down the line of construction, when he would make further arrangements for future supplies, was an original promise, on the strength of which plaintiff furnished all the goods and supplies after that date. As Mr. Smith did not come down the line at the time expected, the plaintiff absolutely refused to furnish any further supplies to Malone. When Smith came a few days later, the evidence shows that Malone was at the store of the plaintiff awaiting him; and in the conversation that ensued with plaintiff at that time, he stated in substance that he would send a check to the plaintiff for the money due on account of the supplies already furnished to Malone by his direction and promise, but he further stated that the plaintiff should let Malone have all the supplies he wanted, and that he would pay the bills the same as his own; that he had to pay them any way.

From these circumstances, it plainly appears that the credit for the goods furnished Malone was given solely upon the strength of the defendant's promise, which constituted an original obligation on their part to pay for them. It was a direct promise to pay for and be responsible for all goods furnished Malone by the plaintiff after that date.

The law is well settled, where the credit is given entirely to the defendants, and the sale is in fact to them, though the goods are delivered to another person, that the statute does not apply. In such case the oral promise to pay is an original promise, and is not affected by the statute of frauds. In *Hartley* v. *Varner*, 88 Ill. 561, Varner being in the store of Hartley, the parties had a conversation about one Renbottom's account with the latter. Hartley told Varner how much Renbottom owed him, and that he did not intend to credit him any further. Varner replied to this that Renbottom was all right; was at work for or with him; and if Hartley would sell him goods, he, Varner, would see it paid; held, in respect to goods subsequently sold to Renbottom, Varner's promise was original and not collateral, and was unaffected by the statute of frauds. (*Morris* v. *Osterhout,* 55 Mich. 262; *Lance* v. *Pearce*, 101 Ind. 595.)

It is urged that the charges on the books of the plaintiff to Malone are evidence that the sales were made to him, and upon his credit. But such evidence, though competent, is not conclusive that the vendor relied upon the party charged to pay for them, but it is open to explanation by showing as a matter of fact to whom the credit was given. "It is for the jury," said BELL, C. J., "to judge, upon all the evidence, to whom the credit was given, and whether the agreement of the defendants is original or collateral." (*Walker* v. *Richards*, 41 N. H. 391; *Barrett* v. *McHugh*, 128 Mass. 165.) It is enough to say that it was to prevent confounding the accounts as already explained that the charges were thus made on the books. With this explanatory evidence, the referee, who stands in the place of the jury, was satisfied, and as it was proper evidence to

be considered by him, it is not for us to weigh it or revise his findings.

There is another aspect of the case, which deserves some consideration. The defendants were under a contract to construct and complete the road by a certain time. They had made a sub-contract with Malone, and it was necessary that he should have supplies to carry on his portion of the work. His failure to procure them might result in the stoppage of his portion of the work, or be the cause of delaying it, greatly to their disadvantage. Hence, the express statements of Mr. Smith to the plaintiff that he did not want him to stop the supplies on Malone, because he wanted the work to go on; that the bills were the same as his own; that he had to pay for them anyway, and to let Malone have all the supplies he wanted, indicate not alone a direct promise to pay for them, but that in making the promises his evident object was to have the work go on without any liability to stoppage or delay for the want of them.

If the main purpose of the defendants in making the oral promises to become responsible for the supplies furnished Malone, was to serve their own interest or objects, such oral promises to pay are not within the statute of frauds, although not in writing. The rule, as stated by the authorities, is that where the leading purpose of a person who agrees to pay the debt of another is to gain some advantage or promote some interest or design of his own, and not to become a mere guarantor or surety for another's debt, and the promise is made on sufficient consideration, it will be valid, although not in writing. (*Ames* v. *Foster,* 106 Mass. 400; 8 Am. Rep. 343; *Nelson* v. *Boynton,* 3 Met. 396; 37 Am. Dec. 148; *Fullman* v. *Adams,* 37 Vt. 391; *Clapp* v. *Webb,* 52 Wis. 638; *Fitzgerald* v. *Morrissey,* 14 Neb. 198; *Clifford* v. *Luhring,* 69 Ill. 401.) But, as the result already reached is decisive of this case, it is not necessary to consider further this phase of the question.

The judgment will be affirmed.

INDEX.