Argued at Pendleton May 3, reversed and remanded as to appellant
Townley June 21, rehearing denied September 20, 1921.

# MASTERS ET AL. *v.* BIDLER ET AL.

### (198 Pac. 912.)

**Appeal and Error—On Conflicting Evidence, Jury must Decide What
was Said by One Sought to be Held Liable for Goods Intended
for Another.**

1. Where the evidence conflicted as to whether defendant's promise
to pay for goods sold his son-in-law applied only to one or more auto-
mobiles, or whether it also included automobile accessories, it was the
province of the jury to decide what language was used.

**Frauds, Statute of—Verbal Collateral Promise to Pay for Goods Sold
Another cannot be Enforced.**

2. A collateral promise to pay for goods furnished another cannot
be enforced, when not in writing.

**Frauds, Statute of—Promise is Original, and not Collateral, When
Goods Sold on Promisor's Credit Exclusively.**

3. If a sale of goods to be furnished to defendant's son-in-law was
on defendant's credit exclusively, and not on the son-in-law's credit,
defendant's promise to pay therefor was original, and not collateral.

**Frauds, Statute of—Original Promise to Pay for Goods to be Delivered
to Another not a Promise to Answer for Another's Debt.**

4. If one, by an original and not by a collateral promise, agrees to
pay for goods to be delivered to another, then he and not the person
to whom the goods are to be delivered is liable, though the goods
were actually received by the other, and the promise to pay is not a
promise to answer for another's debt.

**Frauds, Statute of—Promise is Collateral, and must be in Writing,
When Another is Liable for the Debt.**

5. Where one promises to pay for goods to be furnished to another,
if the one to whom the goods are to be furnished is liable for the debt,
then the promise is a promise to answer for the debt of another, and
must be in writing, under Section 808, Or. L.

**Frauds, Statute of—When Language Ambiguous, It is Question for
Jury Whether Promise Original or Collateral.**

6. If the language used by the parties was ambiguous, it becomes
a question of fact, for the jury to determine under appropriate in-

---

2. When promises to pay debt of another need and when need not
be in writing, see note in 95 Am. Dec. 251.

5. On contemporary promise of one person to pay where benefit
inures to another as a promise to answer for the default of another
within the statute of frauds, see notes in 15 L. R. A. (N. S.) 215,
226; 32 L. R. A. (N. S.) 598.

6. Original or collateral nature of oral promise to answer for debt
of another as a question of law or fact, see notes in 9 Ann. Cas. 895;
Ann. Cas. 1915B, 257.

structions, whether a promise to pay for goods to be furnished to another was original or collateral, and the jury should be informed what would constitute an original promise and what a collateral promise.

**Frauds, Statute of—Promise is Collateral, if Any Credit Given to Third Party.**

7. A promise to pay for goods to be furnished to a third party is collateral, and must be in writing, if any credit be given to the third party, though the seller principally depends for payment on the promisor.

**Frauds, Statute of—Whether Promise Original or Collateral is Question of Intention.**

8. In determining whether a promise to pay for goods to be furnished to a third party is original or collateral, the intention of the parties must govern; but the intention should be ascertained from the words used in making the promise, the situation of the parties, and all the circumstances concerning the transaction.

**Frauds, Statute of—Evidence Held to Show Credit Given to Third Party, and Hence That Promise was Collateral.**

9. In an action on defendant's alleged promise to pay for automobiles and accessories to be furnished his son-in-law, evidence *held* to show that credit was in part given to the son-in-law, and hence that defendant's promise was collateral, and not original.

### ON PETITION FOR REHEARING.

**Frauds, Statute of—Question Raised by Exceptions at Trial.**

10. Appellant raised the question of the statute of frauds by excepting to instructions given by trial court and also by excepting to the court's refusal to give certain instructions.

**Notice of Appeal—Service not Required on One not Injuriously Affected by the Judgment.**

11. A reversal of the judgment would not injuriously affect Bidler, and consequently failure to serve him with notice of appeal does not prevent the Supreme Court from acquiring jurisdiction.

From Union: J. W. KNOWLES, Judge.

In Banc.

The plaintiffs C. W. Masters and T. B. Perkins are partners, and since August 1, 1916, they have been doing business under the firm name of Masters and Perkins. The partners conducted a garage in the

---

8. Intention of parties as determining whether promise to answer for debt of another is original or collateral, see note in **Ann. Cas.** 1914A, 490.

City of Baker, and, in addition to making repairs on cars, they sold automobiles and automobile accessories. M. L. Bidler was a plumber and conducted a plumbing-shop in the City of Union. W. J. Townley, who is Bidler's father-in-law, also resided in Union.

On and between October 2, 1916, and September 27, 1917, the plaintiffs delivered to Bidler automobile accessories. The plaintiffs brought this action against Bidler and Townley alleging that "at the special instance and request of said defendants, plaintiffs sold and delivered to said defendants, automobile supplies" of the reasonable value of $687.25, of which no part had been paid except $394.93, leaving the sum of $292.32 due and owing.

The defendants filed separate answers. Bidler "assumed liability for anything not paid for but alleged that the bill was fully paid." Townley denied liability. There was a verdict and a judgment against both Bidler and Townley for the amount demanded by the plaintiffs. Townley alone appealed.

REVERSED AND REMANDED. REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Crawford & Eakin,* with an oral argument by *Mr. T. H. Crawford.*

For respondents there was a brief and oral argument by *Mr. O. B. Mount.*

HARRIS, J.—It is conceded that none of the supplies involved in this action were delivered to Townley but that all of them were delivered to Bidler. The plaintiffs claim that Townley agreed, before the supplies were delivered, to pay for whatever articles the plaintiffs might let Bidler have. Townley asserts

that he agreed to be responsible for one automobile and that his agreement included nothing more. Whatever promise was made by Townley was made in the course of a conversation which occurred in the plaintiffs' garage in Baker in September, 1916. We must therefore examine the evidence relating to that conversation.

Townley happened to be in Baker with his automobile in September, 1916, and while there he drove to the plaintiffs' garage, where he met Perkins with whom he was acquainted, although they had not met for some time. On this occasion Townley and Perkins engaged in conversation; and it is conceded that no third person was present or heard what was said by the parties. In the course of the conversation Townley learned that the plaintiffs sold Studebaker and Dodge cars. Although Bidler was engaged in the plumbing business he had devoted some of his time to selling automobiles as a "side issue." It seems that Bidler had a prospective purchaser and Townley was aware of that fact. Townley claims that he asked Perkins if the plaintiffs would let Bidler take an automobile and sell it on commission; and Townley also says that he told Perkins that if the plaintiffs would permit Bidler to take a car under such an arrangement, he would be responsible to the plaintiffs for the return of the car or its value. It is conceded that Perkins was not at that time acquainted with Bidler although Bidler says he was in Baker when Townley talked with Perkins. There is no evidence that Bidler met Perkins or that either one saw the other on that day.

A few days after the conversation between Townley and Perkins the plaintiffs delivered an automobile

to Bidler, who sold it and promptly accounted to the plaintiffs for the price less a commission of 12½ per cent, which he retained. Subsequently Bidler received four other cars from the plaintiffs and he likewise accounted for the price of each of these four cars retaining the commission as in the case of the first car. When getting one or more of these cars Bidler also received some automobile "parts"; but it is conceded that Bidler paid for these "parts." If the promise made by Townley was limited to the automobiles or only to one automobile, then the plaintiffs cannot recover in this action. While there is no controversy about the automobiles sold by Bidler, nevertheless the evidence concerning them is properly to be considered because it tends to explain the conversation about the alleged liability of Townley for the accessories.

According to the testimony of Bidler:

"The next spring, early in the spring, I changed the plumbing-shop over slightly, so I would have some room to do some repair work on cars, and at that time I went to Baker City, needing some extras and some tires," and made arrangements with the plaintiffs for "tires and so on."

When using the words "next spring" Bidler meant the spring next after the conversation between Perkins and Townley. Perkins testified that—

"in the fall or the next spring [meaning the fall or spring next after the conversation between Townley and Perkins] Mr. Bidler came up and wanted to put in a stock of tires and tubes and such stuff as that, and we told him all right."

It is thus far made to appear that Townley and Perkins had a conversation in September, 1918, and this is the only conversation attributed to Townley

before the sale of the accessories which are now in dispute. Bidler did not take part in the conversation between Townley and Perkins; nor did he hear what was said. Presumably Townley told Bidler that the latter could get a car from the plaintiffs; for shortly after the conversation mentioned Bidler went to Baker and got a car. However, the evidence fails to disclose whether any conversation occurred between either of the plaintiffs and Bidler when the latter received the cars mentioned. The only conversation attributed to Bidler before the sale of the accessories and with reference to them is the conversation to which Perkins referred when he testified that Bidler "came up and wanted to put in a stock" of accessories. These facts must not be forgotten when we come to consider the question as to whether or not the promise made by Townley is within or without the statute of frauds.

We now direct attention to the evidence upon which the plaintiffs base their claim that Townley's promise was broad enough to include liability for both automobiles and accessories. Referring to the conversation which occurred in September, 1916, Perkins testified as follows:

"He [Townley] said he had a son-in-law that was quite a mechanic, and he was running a plumbing establishment in Union, and he wanted to know if we could let him take some cars and sell them there for us, * * and so I told him he could sell in our territory; we would let him have cars, and he could sell them in our territory. And so in a short time after that why Mr. Bidler came up and got a car, and sold it, and I think he sold either four or five, and we allowed him his commission of 10 per cent, and in a short time,—let's see, I think it was in,—it was in the fall or the next spring, why he came up and wanted

to,—Mr. Bidler came up and wanted to put in a stock of tires and tubes and such stuff as that, and we told him all right. Mr. Townley told me when he was there, that anything we done with Mr. Bidler would be all right,—to let him have what he wanted, and so we did.

"Q. And what did he say about setting his son-in-law up in business?

"A. Why, he said he was inclined to be mechanical, and he would like to set him up in business, and have him doing business; that he could run the automobile business with his plumbing establishment that he had there; that there wasn't quite enough,—wasn't much to do in the plumbing, and he could handle both together.

"Q. On whose credit did you extend,—did you deliver these goods?

"A. Well, on Mr. Townley's principally, because we didn't know Mr. Bidler, only just what Mr. Townley had told us is all.

"Q. How long after you had this conversation with Mr. Townley was it that Mr. Bidler came up and started to take merchandise away from your place of business?

"A. Well, it wasn't a great while."

The record shows that Perkins also testified as follows:

"Q. Mr. Townley at that time told you, that if you would let Mr. Bidler have the car for sale,—on a commission basis, was it?

"A. Yes.

"Q. That he would be responsible for either the return of the car, if it was not sold,—in proper condition, or the payment of the price of the car, if it was sold?

"A. Well, he just said this way,—anything we would let him have would be all right,—he would make it all right.

"Q. Now his talk at that time was about the car, wasn't it?

"A. Yes.

"Q. He wanted you to let him have a car?

"A. Yes.

"Q. And if you would let him have a car, he would be responsible for it?

"A. I suppose so; that is the way we understood it.

"Q. That is what he said?

"A. Yes. * *

"Q. But you were talking about Mr. Bidler getting a car, weren't you,—that is what you were talking about?

"A. Why no, we wasn't exactly. Of course he was figuring on starting Mr. Bidler up, as I understand, in the business there in connection with his plumbing, and of course he would have to have parts.

"Q. Well, I am not talking about that; he didn't say he would have to have parts?

"A. No, he didn't come right out and say 'parts.' "

1. We have given all the evidence offered in behalf of plaintiffs from which it could be argued that the promise made by Townley embraced automobile accessories as well as one or more automobiles. The defendants introduced evidence which contradicted the version given by Perkins. Townley claimed that the conversation related to whether or not the plaintiffs would be willing to let Bidler have one automobile to sell on commission and that nothing else was mentioned. If Townley correctly remembered the conversation, then the promise made by him did not include automobile accessories and he could not be held liable in this action. In this situation it became the province of the jury to decide whether Townley used the language which he said he used or whether he employed the language attributed to him by

Perkins. We shall therefore assume for the purposes of this discussion that the jury found that Townley used all the language which Perkins attributed to him.

Whenever the plaintiffs received an order from Bidler for accessories they entered the items of the order on a pad containing sheets for carbon copies of penciled entries; and from this pad the plaintiffs took the original penciled sheet and sent it with the accessories to Bidler and retained the carbon copy. Although these carbon memorandums were offered in evidence we do not find them with the files. However, we understand from the record that they were entered under the name of Bidler. Perkins testified that from these carbon memorandums entries were posted in a loose-leaf ledger and that ordinarily this was done within a day after filling the orders. There is in the files a purported copy of a part of a loose-leaf ledger and from this copy we learn that the entries were posted in the ledger under the heading of "J. W. Townley by M. L. Bidler." Perkins testified that each month the plaintiffs sent a statement of the account to Bidler. In addition to sending statements to Bidler, Perkins said: "Every time I would meet him, I would talk it over" with Bidler and he never denied the bill.

Perkins also testified:

"We just sent statements to Mr. Bidler for quite a while and we didn't get any returns from it, * * and finally we sent Mr. Townley a statement direct."

We understand from the record that the statement sent to Townley was first mailed in the fall of 1917 and probably after the delivery of all the accessories involved in this litigation.

2–5. The next inquiry is: Was the promise made by Townley original or collateral? There was no writing, hence if the promise was collateral it cannot be enforced. If the promise made by Townley was merely to answer for the debt of Bidler, then his promise was collateral. If the sales were made upon Townley's credit exclusively and not upon Bidler's credit, then Townley's promise was original and not collateral. If A by an original and not by a collateral promise agrees to pay B for goods to be delivered to C, then A alone and not C is liable; and the fact that the goods were actually received by one who is not liable makes no difference, for in contemplation of the law the sale is made to A and not to C; and in that event the promise made by A is not a promise to answer for another. But if C is liable for the debt then the promise of A is a promise to answer for another and in that event the promise of A must be in writing. If C is liable to B for the goods then the promise of A is in aid of and collateral to the promise, express or implied, of C and hence is "void" under Section 808, Or. L.

6, 7. If it can be said that the language used by parties was ambiguous it then becomes a question of fact for the jury to determine under appropriate instructions whether the promise was original or collateral: *Bryant* v. *Panter,* 91 Or. 686, 690 (178 Pac. 989); but the jury should be informed as to what will constitute an original promise and as to what will constitute a collateral promise: Note in 9 Ann. Cas. 895. The determination of whether a promise is an original promise as distinguished from a collateral one depends upon whether credit is extended solely to the promisor or whether the indebtedness is also primarily the in-

debtedness of the third person to whom the considera-
tion moves. If credit is given solely to the promisor
it is an original promise and not within the statute of
frauds. But if any credit be given to the third party
the defendant's promise is collateral and must be in
writing. Nor does it matter upon which of the two
parties the plaintiff principally depends for payment
so long as the third party is at all liable to him to do
the same thing which the defendant has engaged to
do: *Mackey* v. *Smith,* 21 Or. 598, 603 (28 Pac. 974);
*Allen* v. *Leavens,* 26 Or. 164, 168 (37 Pac. 488, 46 Am.
St. Rep. 613, 26 L. R. A. 620); *Slade* v. *Utah Con-
struction Co.,* 57 Or. 525, 534 (112 Pac. 433); *Hurst
Hardware Co.* v. *Goodman,* 68 W. Va. 462 (69 S. E.
898, Ann. Cas. 1912B, 218, 32 L. R. A. (N. S.) 598);
*Johnson* v. *Bank,* 60 W. Va. 320 (55 S. E. 394, 9 Ann.
Cas. 893); *Swaboda* v. *Throgmorton-Bruce Co.,* 88
Ark. 592 (115 S. W. 380); *Welch* v. *Marvin,* 36 Mich.
59; note in 126 Am. St. Rep. 492; note in 15 L. R. A.
(N. S.) 215, 226; 20 Cyc. 180; 23 R. C. L. 1271; 25
R. C. L. 487, 489; 12 Ency. of Ev. 9; Browne on Statute
of Frauds (5 ed.), § 197.

8. The intention of the parties must govern; but
the intention should be ascertained from the words
used in making the promise, the situation of the par-
ties and all the circumstances concerning the transac-
tion: 25 R. C. L. 489; *Mackey* v. *Smith,* 21 Or. 598,
602 (28 Pac. 974).

9. If we now apply the test established by the law,
the conclusion must be that the promise of Townley
was a collateral one. It will be recalled that when
asked, "On whose credit did you extend—did you
deliver these goods?" Perkins answered: "Well, on
Mr. Townley's principally, because we didn't know

Mr. Bidler, only just what Mr. Townley had told us is all.'' Thus it appears from the testimony of Perkins himself that credit was given to Townley ''principally''; and this is only another way of saying that credit was in part given to Bidler. Moreover, the plaintiffs subsequently treated Bidler as a debtor, and finally they sued Bidler together with Townley on the theory that Bidler was also liable and they prosecuted that theory to a judgment against Bidler. No witness testified that deliveries were made solely on the credit of Townley; but, on the contrary, it affirmatively appears from the testimony of Perkins himself that some credit was given to Bidler, although the supplies were furnished ''principally'' on the credit of Townley. This fact shown by the evidence offered by plaintiffs prevents them from recovering from Townley. At the trial Townley requested but was denied an instruction directing the jury to return a verdict for him. Townley was entitled to a directed verdict: *Welch* v. *Marvin,* 36 Mich. 59; *Hurst Hardware Co.* v. *Goodman,* 68 Va. 462 (Ann. Cas. 1912B, 218, 32 L. R. A. (N. S.) 598).

If the defendants had jointly promised to pay for the supplies, Townley would be liable; but there is not a scintilla of evidence showing that they promised to pay the plaintiffs: *Bryant* v. *Panter,* 91 Or. 686 (178 Pac. 989); *Welch* v. *Marvin,* 36 Mich. 59; 13 C. J. 573.

The judgment is reversed as to Townley, and the cause is remanded, with directions to enter a judgment in favor of him.      REVERSED AND REMANDED.

BENSON, J., not sitting.

Denied September 20, 1921.

ON PETITION FOR REHEARING.

(199 Pac. 920.)

REHEARING DENIED.

*Mr. O. B. Mount,* for the petition.

*Messrs. Crawford & Eakin, contra.*

In Banc.

HARRIS, J.—In our original opinion we ruled that the trial court should have directed a verdict for Townley as requested by him. Our ruling was based upon the theory that the promise made by Townley was a collateral promise to answer for the debt of Bidler and therefore was within the statute of frauds.

The plaintiffs petitioned for a rehearing, because, they say, (1) Townley waived the statute of frauds; and (2) Bidler was not served with notice of appeal, with the result that this court is without jurisdiction.

Townley, as appellant, contended in his printed brief presented at the original hearing that the statute of frauds applied; and this was the only contention presented by him. In their printed brief presented at the original hearing the plaintiffs confined their efforts to an attempt to show that Townley's promise was direct and not collateral and therefore not controlled by the statute of frauds. Indeed, aside from the single point that under our Constitution no fact tried by a jury shall be otherwise re-examined in any court, every point and every citation made by the plaintiffs under the heading "Points and Authori-

ties" was in support of the contention that the promise of Townley was a direct and not a collateral one. In their petition for a rehearing, however, the plaintiffs for the first time contend that Townley has waived the right to rely upon the bar of the statute of frauds and that the failure to serve Bidler with notice of appeal prevented this court from acquiring jurisdiction. In compliance with our request counsel for the respective parties have submitted for our consideration carefully prepared briefs giving their reasons for their respective contentions concerning the questions raised for the first time in the petition for a rehearing.

We are unable to concur with the plaintiffs in their contention that Townley waived the bar of the statute of frauds. The language of our statute is exceedingly drastic; for in express terms it is declared that "the agreement is void" unless there be a writing, and evidence "of the agreement shall not be received other than the writing": Section 808, Or. L.; *Lueddemann* v. *Rudolf*, 79 Or. 249, 258 (154 Pac. 116, 155 Pac. 172). See, also, *Taggart* v. *Hunter*, 78 Or. 139, 155 (150 Pac. 738, 152 Pac. 871, Ann. Cas. 1918A, 128).

It may be assumed on the authority of *Hawley* v. *Dawson*, 16 Or. 344, 347 (18 Pac. 592), that an appellant must in some form raise the question of the statute of frauds in the trial court before he can rely upon the statute in the appellate court. Our statute declares that an agreement to answer for the debt of another is void unless in writing; and hence in contemplation of law there is no contract unless there is a writing. The complaint alleges that at the request of Bidler and Townley the plaintiffs sold and delivered to the defendants the goods, wares and merchan-

dise mentioned in the complaint. The answer of
Townley was a general denial. In other words,
Townley denied that he had made any contract with
the plaintiffs. Townley's reliance upon the statute
of frauds was not a defense involving a confession
and avoidance. He did not confess an agreement and
then avoid it by invoking the statute; for under the
statute there was no agreement. Townley's pleading
enabled him to raise the question of the statute of
frauds: *Great Western Land Co.* v. *Waite,* 87 Or. 488,
494 (168 Pac. 927, 171 Pac. 193); *Render* v. *Lillard,*
61 Okl. 206 (160 Pac. 705, L. R. A. 1917B, 1061, 1065);
25 R. C. L. 745.

Townley did raise the question of the statute of
frauds; for he not only excepted to certain instruc-
tions given by the court but he also excepted to the
refusal of the court to give certain instructions,
among which was a requested instruction directing
the jury to return a verdict for Townley. In their
printed brief the plaintiffs say:

"The only question was and is was the stuff fur-
nished on the credit of Mr. Townley, and the jury
found it was."

And again the plaintiffs say in concluding their
printed brief:

"The only point in the lower court appellant re-
served for review, was whether the promise of Town-
ley was original or collateral and the jury decided it
adverse to his contention."

Townley's pleading enabled him to invoke the pro-
tection of the statute of frauds; and he did invoke the
statute by excepting to the giving and to the refusal
to give certain instructions: *Hawley* v. *Dawson,* 16
Or. 344, 347 (18 Pac. 592). See also note in L. R. A.

1917B, 1072.  We are unable to agree with the contention that Townley did not raise the question of the statute of frauds in the Circuit Court.

If Bidler was an adverse party within the meaning of Section 550, Or. L., as judicially construed, then the failure to serve Bidler with notice of appeal prevented the acquirement of appellate jurisdiction; and consequently if this court has not acquired jurisdiction we must, even though the question is first raised on a petition for a rehearing, dismiss the appeal and leave the judgment as we found it.  If a reversal or modification of the judgment would injuriously affect Bidler, then he is an adverse party, and in that event notice to him was indispensable since he has not appeared in the appellate court: *D'Arcy* v. *Sanford,* 81 Or. 323, 327 (159 Pac. 567).  Will a modification or reversal of the judgment so far as it relates to Townley injuriously affect Bidler?  Bidler expressly admitted in his answer that on his own individual account he purchased items of merchandise from the defendants and he "assumed liability for anything not paid for, but alleged that the bill was fully paid."  Townley denied the making of any promise to pay for any of the items mentioned in the complaint.  On the evidence presented by the plaintiffs, even when viewed in a light most favorable to the plaintiffs, the debt was that of Bidler, and the promise of Townley was at the most a promise to pay the debt of Bidler.  In the answer filed by Bidler he says the debt was his alone.  As pointed out in the original opinion there was not a scintilla of evidence showing that Bidler and Townley jointly promised to pay the plaintiffs.  If, then, the judgment stands undisturbed the plain-

101 Or.—22

tiffs can, it is true, compel either Bidler or Townley or both of them to pay the judgment. If the plaintiffs compel Bidler to pay the whole amount he could not compel Townley to contribute to him, because as between Townley and Bidler the debt is that of the latter. If, however, Townley is compelled to pay the judgment he can in turn compel Bidler to reimburse him, for the reason that as between him and Bidler he has paid Bidler's and not his own debt. As between Bidler and Townley the debt is in the final analysis the debt of Bidler and cannot be said to have been finally liquidated as between all parties until it is fully paid by Bidler. If the judgment is reversed as to Townley the reversal merely erases Townley's name from the judgment; but this in nowise injuriously affects Bidler because his ultimate liability is still the same. If the judgment is undisturbed Bidler must ultimately pay the whole debt. If the judgment is reversed as to Townley, nevertheless Bidler must ultimately pay the whole debt. A reversal as to Townley does not injuriously affect Bidler; and consequently failure to serve him with notice of appeal did not prevent this court from acquiring jurisdiction.

The petition for a rehearing is denied.

REHEARING DENIED.