Argued at Pendleton October 30, 1923, reversed January 14, 1924.

# BANK OF JORDAN VALLEY v. JOHN A. OLIVER.

(221 Pac. 1067.)

**Frauds, Statute of—Oral Agreement by Mortgagee of Sheep to Pay Mortgagor's Note for Feed Held Void, Interest in Having Them Fed Being Insufficient Consideration.**

1. Oral agreement by mortgagee of sheep to pay note executed by mortgagor for feed out of the proceeds of the sale of wool, sheep and lambs, *held* void under the statute of frauds, since such agreement was a collateral oral agreement on the part of mortgagee to pay mortgagor's note; the mortgagee's incidental interest in having the sheep fed being insufficient to constitute a consideration for an original promise.

**Appeal and Error—Testimony of Prevailing Party Taken as True.**

2. Testimony of party in whose favor verdict was rendered, though contradicted, will be taken as true on appeal

From Malheur: DALTON BIGGS, Judge.

In Banc.

This was an action brought to recover on certain promissory notes, the execution of which was ad-

mitted by the defendant, aggregating the sum of $2,700. The defendant admitted the sum of $825 to be due, but counterclaimed as follows:

"I.

"That on or about the 10th day of February, 1920, one Jose Zavala was the owner of two bands of sheep consisting of ewes and 1919 crop of lambs, to the gross number of about 3,000 head, and that he had no hay with which to feed said sheep and no money with which to purchase hay. That at said time plaintiff held and owned a chattel mortgage on said sheep to secure the payment of a note for large sums of money aggregating many thousands of dollars, the exact amount of which the defendant is unable to state

"II.

"That on said 10th day of February, 1920, the plaintiff sent said Zavala to the defendant to purchase hay with which to feed said sheep and defendant refused to sell to Zavala and that thereupon, at the special instance and request of the plaintiff, the defendant sold to plaintiff —— tons of hay at the reasonable and agreed price and value of $—— per ton, aggregating the sum of Four Thousand, Seven Hundred Forty-one and 36/100 ($4,741.36) Dollars, which plaintiff then and there agreed to pay out of the proceeds of the first sale of sheep and wool.

"III.

"That said hay was used by said Zavala in feeding said sheep upon which plaintiff had and held said chattel mortgage, and the same was for the advantage, use and benefit of plaintiff in preserving its said security.

"IV.

"That thereafter and about July, 1920, the plaintiff and said Zavala sold sheep and wool for large sums of money, the exact amount of which is unknown, but defendant alleges for much more than the amount due defendant for said hay, and that no

part thereof was applied to the payment for said hay except that on August 24, 1920, there was applied by plaintiff out of the proceeds of said sale, the sum of Three Thousand Dollars, leaving a balance due and owing from plaintiff to defendant on the principal of the purchase price of said hay in the sum of One Thousand Seven Hundred Forty-one and 36/100 ($1,741.36) Dollars, and interest on the whole sum of Forty-seven Hundred Forty-one and 36/100 ($4,741.36) Dollars from February 10 to August 24, 1920, at the rate of six per cent (6%) per annum, amounting to the sum of One Hundred Fifty-four and 09/100 ($154.09) Dollars. That there is now due and owing from plaintiff to defendant on account of said purchase price of said hay, the sum of Eighteen Hundred Ninety-five and 45/100 ($1,-895.45) Dollars, with interest thereon at the legal rate of six per cent (6%) per annum from August 24, 1920, until paid.''

Plaintiff replied, admitting that Zavala was the owner of the sheep mentioned in the complaint, and that plaintiff owned and held a chattel mortgage on the same, but denied all the other allegations in paragraph two of the separate answer and defense. Plaintiff denied any knowledge as to whether the hay mentioned in the answer was used by Zavala to feed said sheep. Further denials were as follows:

''4.

''Denies the allegations contained in paragraph four of said further and separate answer, except as herein stated; and alleges the truth to be that during the summer of 1920 the said Jose Zavala sold certain of his sheep and wool, and out of the proceeds paid a part of his indebtedness to the plaintiff, and also made payment on his hay notes given defendant, and this plaintiff had nothing whatever to do with the said payment made the defendant and did not pay the same or any part thereof, and plaintiff

particularly denies that it is owing defendant any sum or amount whatever, either as a credit on plaintiff's claim against defendant, or otherwise, or at all.
"5.
"Denies the allegations contained in paragraph five of said further and separate answer, and denies that there is any other or different amount due from defendant to plaintiff than the amount set forth and alleged in plaintiff's complaint."

The cause being at issue, the jury rendered a verdict in favor of plaintiff for $815 and $81.50 additional as attorney's fees, and the court rendered judgment accordingly. On the motion for new trial, the court's attention was called to the fact that the verdict was for $10 less than the sum admitted in the pleadings, and thereupon the judgment was so amended as to give plaintiff $825 instead of $815, and the judgment for attorney's fees to read $82.50 instead of $81.50. From this judgment plaintiff appeals.                                         REVERSED.

For appellant there was a brief and oral argument by *Mr. Wells W. Wood.*

For respondent there was a brief over the names of *Mr. George E. Davis* and *Mr. Bruce R. Kester,* with an oral argument by *Mr. Davis.*

McBRIDE, C. J.—1. While, from a moral point of view, there is good reason to say that the bank ought to pay for the hay fed to the sheep in which the bank had an interest as mortgagee, we cannot, in view of Oliver's testimony, hold the bank as anything but a collateral promisor. It is true that this works a hardship on the defendant, Oliver; but, in spite of the attempt of ingenious counsel to build up a con-

tract to pay for the hay, the fact will appear that the real contract was that Oliver was to let Zavala have the hay and take his note for the price of it, and that the bank would pay the note out of the proceeds of the sale of the wool, sheep and lambs,— a perfectly good contract if it had been in writing but void under our statute.

We reproduce the statements of Oliver as to the contract but italicize those statements as to the method of payment:

"A. Well, he [Looney, the cashier] told me to let him [Zavala] have the hay. They had the mortgage on the sheep and the sheep had to be fed, and he started a *note* [from Zavala to Oliver] I think to take out for *Zavala to sign,* and then it can be brought back to the bank and they can loan me money until he [Zavala] *paid off on the note.* * *

"Q. Was there anything said about a sale of the sheep or the wool at that time?

"A. Yes, when they sold the sheep and the wool and the lambs why they would pay for it.

"Q. The bank would pay for the hay?

"A. Pay the note."

And further:

"A. When Mr. Zavala wanted the hay I told him I had to see the bank because he told me they had a mortgage. I went in and saw Mr. Looney. He told me it would be all right, they had to feed the sheep, and for me to *take this note and the bank would pay it.*"

2. Taking Oliver's testimony as true, as we must after verdict, although it is flatly contradicted by the cashier, with whom the transaction was had, and disputed in some respects by the president of the bank, the state of the case is as follows: The bank had

a chattel mortgage on some 3,000 head of sheep owned by Zavala. It was midwinter and it was necessary for the preservation of the sheep that Zavala should get hay from somebody with which to feed them. Oliver had the hay and Zavala desired to purchase it, but when the hay was tentatively measured and the price agreed upon he stated that he had no money, that the sheep were mortgaged to the bank, and that the bank could loan him no more money; the fact being that he had borrowed all that the bank was permitted to loan to any one person. Oliver refused to credit Zavala for the hay and said that he must first see the bank, which he did, where an arrangement was made whereby Oliver was to let Zavala have the hay and take his note for it, the bank orally agreeing to pay the note from the proceeds of the sale of wool, sheep and lambs the succeeding summer. Oliver suggested that if he gave such long credit he, himself, would be short of money, and was told by the cashier that he could bring the Zavala note to the bank and deposit it as collateral, and that the bank would loan him upon it such amount as he might require. Oliver took the note partly prepared by the cashier of the bank and delivered the hay to Zavala or his employees, and filled up the blanks in the note, which Zavala then signed. Oliver took this note to the bank and deposited it there, without indorsement, which probably in his ignorance he did not know was necessary, and from time to time borrowed money from the bank, giving his notes for the same, and afterwards renewed them. The amount sued for here is the balance due on these renewed notes, after deducting $3,000 paid out of the sum secured upon the sale of sheep, lambs and wool.

We cannot, under the authorities and the testimony, construe this as anything but a collateral, oral agreement on the part of the bank to pay Zavala's note. That is what Oliver says that they agreed to do. It is to be observed that the most of the statements quoted were not drawn from the witness by adroit cross-examination, tending to confuse him, but were, for the most part, given on his direct testimony, and were made with a naturalness which indicates that they convey his exact understanding of what took place at the time. That his ignorance might have been taken advantage of, or his confidence in the cashier's words been misplaced, is unfortunate, but such is frequently the case in those instances where the word of a man is taken where the statute of frauds has provided that an agreement to answer for the debt of another shall be in writing.

This case does not differ in principle from *Masters v. Bidler*, 101 Or. 322, 331 (198 Pac. 912, 199 Pac. 920), and cases there cited. In this case it is true that the plaintiff had an incidental interest in having the sheep fed, but such benefit was not sufficient to constitute in itself a consideration for an original promise to pay Zavala's note, or to create an obligation to pay for hay fed to Zavala's sheep, and here the extent of the promise is to pay a note given by Zavala in payment for hay. In this respect the case is similar to *Condon Nat. Bank v. Cameron* (Or.), 216 Pac. 558.

The judgment will be reversed and a new trial directed.                                        REVERSED.

BURNETT, J., not sitting.