# CHARLESTON.

### HURST HARDWARE CO. v. GOODMAN.

Submitted January 19, 1910.    Decided December 20, 1910.

1. FRAUDS, STATUTE OF—*Promise to Answer for Debt of Another.*
    If property be delivered or services rendered to one person upon an oral promise of payment by another, and charged only to the person to whom delivery was so made or for whom services were so rendered, and an effort made to collect the purchase money or compensation from the person against whom the charge was made, such promise is collateral and, if not in writing, void.

2. SAME.
    If the main purpose of an oral promise by one person to pay a sum of money for which another is liable or may become liable

is to secure a direct, personal and pecuniary benefit to the promisor, the promise is original and not within the statute of frauds, though such third person remain liable for the debt.

3. SAME—*Promise to Pay the Debt of Another.*

   If the benefit, derived by the promisor in return for such a promise is remote, indirect and not personal, the promise is collateral and within the statute.

4. SAME—*Payment of Corporate Debts—Oral Promise of Stockholder.*

   The oral promise of an officer and stockholder of a corporation, who is liable as an endorser on its paper and for debts or obligations, assumed by the corporation, to pay for goods sold and delivered to it, is collateral and within the statute, the benefit, accruing to him from such sale and delivery, being remote and indirect.

Error to Circuit Court, Mingo County.

Action by the Hurst Hardware Company against A. Goodman. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Stokes & Bronson* and *Sheppard, Goodykoontz & Scherr,* for plaintiff in error.

*Campbell, Brown & Davis,* for defendant in error.

POFFENBARGER, JUDGE:

Alleged error in the rulings of the trial court on a demurrer to evidence constitutes the ground of complaint on this writ. The Hurst Hardware Company instituted the action to recover a sum due it for merchandise sold and delivered to a corporation, known as the Goodman Coal & Coke Company, amounting to $900.85, and also a sum due it, as assignee of the Williamson Grocery Company, for goods sold and delivered to the same corporation; on the theory that the defendant, A. Goodman, had bound himself by verbal promises to pay said debts, not within the statute of frauds.

The facts disclosed by the uncontradicted testimony are substantially as follows: The defendant and one Sampsell took a coal lease on a tract of land known as the Stepp land, providing for the payment of a heavy minimum annual royalty. The Goodman Coal & Coke Co. was organized to develop the property and

said lease assigned to it.  Goodman was a heavy stockholder in that corporation and its president and treasurer.  He was also obligated with others, by endorsements, for some of its debts. The plaintiff and its assignor had been furnishing it merchandise.  As it failed to pay its bills promptly and seemed to be embarrassed, each of these companies declined to fill some of its orders for goods.  Thereupon the defendant made to each of them the promises relied upon here as binding him personally. At that time, the corporation owed the Williamson Grocery Co. a considerable sum, which the defendant paid by a check of the corporation.  He then talked to the manager of the grocery company who says he told him he would be personally responsible for the amounts to become due on all future purchases by the company.  Thereafter it delivered or furnished the corporation goods to the amount of $1,542.50, charging them to it and rendering it statements for the same.  At or about the same time, the corporation was indebted to the hardware company to the extent of about $600.00.  Its manager called upon the defendant, who promised to make a substantial payment on the old account and ordered shipment of such goods to the corporation as should be thereafter needed or wanted, and promised to pay for them himself.  Afterwards, he sent the corporation's check for $100.00.  Additional goods were furnished and charged to the corporation, until the balance due amounted to $900.85. Later the corporation went into the hands of a receiver and then into bankruptcy, and both the Hurst Hardware Company and the Williamson Grocery Company filed their accounts against it in the bankruptcy proceeding, whence each received a portion of its debt.

If the situation of the defendant as an officer and stockholder of the corporation, endorser on its paper, and principal in the obligation for royalties, payment whereof was assumed by the corporation, did not make these debts for goods his own debts, founded upon consideration moving to him, and the promises original, the judgment is right.  By charging the goods to the corporation and demanding payment thereof from it, the vendors disclosed manifest, positive and unequivocal intent to hold it a debtor to them.  In seeking now to hold Goodman also, they are attempting to make him pay the acknowledged debt of the corporation.  In such cases, the decisive test is to whom credit

was given, and it must have been given to the promisor alone. If the creditor relies upon the person to whom the property is delivered or for whom the service is rendered to any extent whatever the promise is collateral and void, if not in writing. *Johnson* v. *Bank,* 60 W. Va. 323; *Mankin* v. *Jones,* 63 W. Va. 373; 20 Cyc. 180, 181. Here the charging of the goods to the corporation, rendition of statements to it and assertion of claims therefor against it in the bankruptcy proceeding, all admitted by the plaintiff, effectually preclude a finding in its favor. A verdict for it, on this theory of the case, could not be sustained.

The decision must turn, therefore, upon the inquiry as to the effect of the relation existing between Goodman and the Goodman Coal & Coke Co. If, in substance, effect and main purpose, the oral agreements were for his benefit, the promises were original and not collateral undertakings. It is not enough merely to say he was benefited by them. In ordinary contract law, a benefit to the prisoner or detriment to the promisee constitutes a sufficient consideration. The question we are called upon to determine goes beyond this. How far the policy which dictated the statute of frauds, and the terms in which the legislative will is expresed, must have weight in the solution thereof. In almost every instance of the assumption of one man's debt by another, there is some reason for the promise, some benefit accruing to the promisor as well as the debtor. The acknowledged and expressly declared purpose of the statute is to preclude the establishment of rights by oral testimony, when the situation of the parties is such as to constitute a strong motive for perjury and fraud in establishing a liability, or the false extension or amplification of conversations and transactions so as to make them impose obligations lying beyond their real scope and effect. To this end, it ordains and declares that no action shall lie to charge any person upon a promise to answer for the debt, default or misdoings of another, unless the promise or some memorandum or note thereof be in writing signed by the party to be charged thereby or his agent. Tested by its letter, the statute inhibits proof of an oral promise to pay the debt of a third person. That some benefits accrues to the promisor for the service rendered, or the property sold and delivered, to such third person, does not necessarily make the debt that of the promisor or prevent it from being that of such third

person. If the debt is that of another and not of the promisor, the terms of the statute include it, and an incidental benefit, accruing to the promisor cannot exclude it. If, on the other hand, the debt is that of the promisor, the promise is not within the statute though a third person may be incidentally relieved of an obligation in consequence of payment. If, for a consideration, the promisor has assumed the debt of another and made it his own, the promise lies beyond the terms and policy of the statute. Neither its terms nor policy relate exclusively to the subject of benefit or detriment. The subject matter is the mode of proof of the assumption by one man of another's debt. Therefore, whether the debt is that of another is the true test.

This question has been the subject of much discussion and somewhat varied judicial rulings. A divergence of opinion, respecting it, between Chief Justice Shaw, of Massachusetts, and Chancellor Kent, of New York, became manifest many years ago. In some states, the views of one are adopted and in some the views of the other. New York has receded from the position taken by Chancellor Kent and substantially adopted that of the Massachusetts court. In *Leonard* v. *Vredenburgh*, 8 Johns. 29, Chancellor Kent took the position that a promise to pay the debt of another, arising out of some new and original consideration of benefit or harm moving between the newly contracting parties, is not within the statute. As this practically eliminated all promises founded upon a consideration, sufficient under the rules of common law, it relieved from the operation of the statute a vast number of promises, such in character as to bring them clearly within the policy which dictated the enactment of the statute. For this reason, the New York court of appeals has limited it very greatly. It now holds that mere detriment to the promisee is not enough to take a promise out of the statute. *Mallory* v. *Gillett*, 21 N. Y. 412. In that case, it was held that the new consideration must move to the promisor and be beneficial to him. In *Brown* v. *Weber*, 38 N. Y. 187, it was observed that this did not sufficiently limit the exception from the statute, for the reason that a promise, made upon a new consideration, moving to the promisor and beneficial to him, may still be only collateral or conditional and therefore within the statute. Accordingly the court said: "The test to be applied to every case is, whether the party sought to be charged is the prin-

cipal debtor, primarily liable, or whether he is only liable in case of the default of a third person; in other words, whether he is the debtor, or whether his relation to the creditor is that of surety to him for the performance, by some other person, of the obligation of the latter to the creditor." These principles were reasserted and applied in *Ackley* v. *Parmenter*, 98 N. Y. 425, and again in *White* v. *Rintoul* 108 N. Y. 222, which decisions bring the rule in New York more nearly into harmony with the views of Chief Justice Shaw, who declared an original promise to be one in which the leading object of the promisor is not to become the surety or guarantor of another's debt, but to subserve or promote some interest of his own, although its effect may be to pay the debt of another. As has been stated, each of these views has been respectively adopted in some of the states, but the latter seems to prevail. *Colgin* v. *Henley*, 6 Leigh 85, has been classed among those adhering to the former, but, on this point, the reasoning of the Court in that case has not been fully set forth. All that was said on the subject is found in one short paragraph and the promise was in writing. The question presented was not exactly the one we have here. The Massachusetts rule has been adopted by the federal Supreme Court in two cases, *Emerson* v. *Slater*, 22 How. 28, and *Davis* v. *Patrick*, 141 U. S. 479. In the former, Emerson had a contract with a railway company to do certain bridge work by a certain date. The railway company became insolvent and unable to meet its engagements, in consequence whereof Emerson quit work and refused to continue it. Thereupon Slater, who was largely interested in the railway company, as a stockholder, and also as the holder of certain contracts, made between him and the company, entered into a written contract with Emerson whereby he bound himself to pay to Emerson certain sums of money in consideration of the promise of the latter to resume the work and complete it by a certain date. As Emerson was unable to complete the work within the time specified in said last contract, Slater extended the time of completion by an oral agreement. The defense was that said oral agreement of extension was within the statute of frauds, Slater's promise having been one for the payment of the debt of the railway company. The court, however, excepted the transaction from the statute upon the ground that Slater's promise was original and not collateral, because

founded · upon a consideration moving to him and beneficial.
The language of Mr. Justice Clifford was as follows: "When-
ever the main purpose and object of the promisor is not to an-
swer for another, but to subserve some pecuniary or business
purpose of his own, involving either a benefit to himself, or dam-
age to the other contracting party, his promise is not within the
statute, although it may be in form a promise to pay the· debt
of another, and although the performance of it may incidentally
have the effect of extinguishing that liability." To sustain this
proposition, he cited both the Massachusetts and New York
cases. As it was held that the promise was made to subserve a
pecuniary· or business purpose of the promisor, it becomes neces-
sary to ascertain upon what peculiar circumstances this conclu-
sion was based, in order to understand the application of the
principle or rule. Slater's interest extended beyond that of
stockholder and officer of the railway company. It is stated in
the opinion in the following clear and concise terms: "Prior to
that date, (the date of Slater's contract), the railroad company
had failed, and was utterly insolvent, owning nothing, it seems,
except the securities transferred to the defendant for his in-
demnity in this transaction, and the franchise of the road. Un-
like what was exhibited in the former record, it now appears
that the defendant had large interests of his own, separate from
his relation to the company as a stockholder, which were to be
promoted by the arrangement. He had leased to the company
railroad iron for the use of the road, amounting in value to the
sum of sixty-eight thousand dollars, and, as a security for pay-
ment, held an assignment of the proceeds of the road to that
amount, with interest, which was to be paid in monthly install-
ments of five thousand dollars. Now, unless the bridges were
completed and the road put in a·condition for use, there would
be no proceeds; and as he had already taken into his possession
all the available means of the company to secure himself for this
new liability, should the road not be completed, the company
could not pay for the iron." The case of *Davis* v. *Patrick* was
similar. Davis had promoted and organized an English com-
pany, to develop a silver mine in Utah and advanced to it five
thousand pounds, which was to be repaid by the delivery to him,
at a place distant from the mines, of a certain number of tons
of silver ore. The plaintiff, Patrick, had been employed to trans-

port the ore. The expectations of the parties were not fully realized. The company became embarrassed. Thereupon Davis agreed to advance further sums of money, and the company executed a contract by which another man by the name of Patrick was put in absolute control of its business, so as to continue the work and get out the ores, which were to be applied to the satisfaction of Davis's original debt and repayment of moneys thereafter to be advanced by him. This instrument virtually put all of the assets and business of the corporation in the hands of Patrick as trustee for the benefit of Davis. The plaintiff continued the work of transportation. Davis furnished money from time to time, but not enough to pay the cost of transportation in addition to other expenses. As an inducement to the plaintiff to go on and continue his work, he made numerous oral promises to pay him. Upon this state of facts, the court applied the doctrine and principles enunciated in *Emerson* v. *Slater,* and accordingly held the defendant's oral promises to have been original and not collateral. It is to be observed that the defendants in these two cases sought, by their contracts, to promote interests of their own, other than such as were attendant upon their rights as stockholders in the corporations; that each had in his own hands and for his own benefit practically all of the assets and property of the corporations whose debts they assumed; and that each, by virtue of the services rendered, obtained direct and immediate personal benefit under their contracts with the insolvent corporations. They are not cases of remote and indirect benefit, accruing to the promisor. That mere interest, as a stockholder of a corporation, receiving the direct and immediate benefit of the contract is not sufficient, has been several times decided. *Bank* v. *Stettheimer,* 101 N. Y. Supp. 513; *Turner* v. *Lyles,* 68 S. C. 392; *Wyman* v. *Gray,* 7 H. & J. (Md.) 409; *Andover* v. *Flint,* 54 Mass. 539; *Searight* v. *Payne,* 2 Tenn. Ch. 175; *Walther* v. *Merrill,* 6. Mo. App. 370. We repeat also that the benefit, accruing to the promisors in the two federal cases above analyzed, was direct and immediate. Each held a mortgage upon all the income of the corporation to secure the repayment of money advanced, and these special interests and rights were found to have been the moving cause of the promises made. The promisors were in a position to obtain the first fruits of the services rendered and to be rendered by the promisees. The doc-

trine of the Massachusetts court and the later doctrine of the New York court has been enunciated and applied by this Court in *Mankin* v. *Jones,* in which Judge BRANNON said, after reviewing the authorities, "In other words, the third party making the promise must derive benefit, to be bound. \* \* \* What else does the statute mean? For what made, if the mere promise, without benefit to the man making it, binds him? His protection against this was the very object of the statute. It is not a question of morality and justice, but public policy, to prevent perjury to sustain false demands. It means that he is not bound for a naked promise to pay a debt of another; but if he himself gets property or other pecuniary benefit he is not merely and only paying the debt of another, but his own." A late case decided by this Court, holding a promise to have been original and beneficial to him, is *Howell* v. *Harvey,* 65 W. Va. 310. There, the work done for which the promisor bound himself to pay, was an improvement put upon his own property. The benefit was direct, immediate and personal. For clear statements of the foregoing principles, well sustained by adjudications, see 29 A. & E. Enc. Law 922, 927, and 20 Cyc. 189, 190, 193.

In this case, the goods the defendant promised to pay for contributed to the development of the company's mine and kept it a going concern for the time being. Defendant had no lien upon the property or assets of the company nor any contract with it by virtue of which the delivery to it of the goods, constituting consideration of the debts, could enure to his direct, immediate and personal advantage. The benefit accrued directly to the corporation and no one else. Incidentally and remotely, the defendant and all other stockholders and creditors may be said to have been benefited, but not otherwise. We do not think this sufficient to bring the case within the rules and principles upon which promises of this kind are held to be original in consequence of benefit accruing to the promisor.

Seeing no error in the judgment, we affirm it.

*Affirmed.*