## FORSTER-DAVIS MOTOR CORP. v. ABRAMS et al.

No. 22975.   Jan. 14, 1936.

W. S. Meyer, for plaintiff in error.

A. A. Davidson and W. C. Abrams, for defendants in error.

CORN, J. The parties will be referred to as they appeared in the trial court, the same as the order herein.

The plaintiff, by its petition in the court below, brought suit against the United Motor Company and W. C. Abrams, alleging an indebtedness due to it, evidenced by promissory notes of the United Motor Company, in the sum of $1,740, including interest thereon and attorney's fees, aggregating $1,952.07, and that the defendant W. C. Abrams agreed to pay a part of this indebtedness, when "due and unpaid," to the extent of $1,500.

A demurrer was filed to the petition by W. C. Abrams, in the argument of which it was contended by him that, upon the facts stated, his alleged promise was collateral and not an original promise, and that the same being oral, stated no cause of action against him. The court took this view of the matter and sustained the demurrer. Plaintiff then obtained leave to file an amended petition, but on the day that the demurrer was sustained. it took judgment against the United Motor Company, alone, for the whole amount sued for.

Later it filed an amended petition against Abrams alone, alleging an original promise to pay the same debt for which it already had taken judgment against the United Motor Company. Upon the theory that the plaintiff had accepted and acquiesced in the ruling of the court in sustaining the demurrer, instead of appealing from it, by taking judgment against the United Motor Company on its original petition, Abrams moved to strike the same from the files. This motion was heard by the court, and was argued by counsel for both parties, and was sustained.

Plaintiff in error appeals from the court's ruling on the demurrer to the original petition, and also upon the ruling of the court sustaining Abrams' motion to strike the amended petition.

By its first assignment plaintiff in error complains of the action of the court in sustaining the demurrer of W. C. Abrams to its petition as plaintiff below.

It cannot, however, complain of that action, nor take advantage of the ruling of the court, as the record shows it took leave to amend its petition, and later filed an amended petition. . The only way to have the ruling reviewed was to stand upon the petition and appeal. Berry v. Barton, 12 Okla. 221, 71 P. 1074; Wagner v. Thorpe, 151 Okla. 142, 2 P. (2d) 1027.

The sections of the statute invoked and discussed on the argument of the demurrer are sections 5126 and 1527, C. O. S. 1921 (9603 and 9604, O. S. 1931):

"A Guaranty Must Be in Writing.

"Except as prescribed by the next section, a guaranty must be in writing, and signed by the guarantor; but the writing need not express a consideration."

"When Promise Deemed Original.

"A promise to answer for the obligation of another in any of the following cases, is deemed an original obligation of the promisor. and need not be in writing: * * *

"Second. Where the creditor parts with value, or enters into an obligation, in consideration of the obligation in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made his surety."

The only paragraph which could have any application is the second paragraph of section 5127, and the question presented on the demurrer was whether, upon the facts alleged in the petition, W. C. Abrams was a principal debtor.

In 20 Cyc. 180, we find the following language:

"In many cases in which goods have been sold or money has been advanced to one person on the oral promise of another to be answerable therefor, a decisive test as to the applicability of the statutes of frauds to the promise is afforded by the determination of the question on whose credit the goods were sold or the money advanced. If it appears that the sale or loan was made in reliance solely on the credit of the promisor, and on his unconditional agreement to be answerable therefor, the statute does not apply; and the rule is the same in the case of an oral promise to pay for services rendered to a third person at the request of the promisor. But in all such cases it is requisite that credit should be given exclusively to the promisor; if any credit be given to him for whose benefit the promise is made the promisor is not liable unless his promise is in writing, and this is so, although the collateral undertaking may have been the principal inducement to the delivery of the goods or the performance of the services."

In 23 R. C. L. 1272. we find:

"To ascertain whether the promise to pay is collateral or original the point of inquiry is, to whom was the credit given at the time of the sale? In such a case, if the credit was extended solely to the party whose promise to pay is sought to be enforced he is regarded as the buyer and his promise to pay original and not collateral, and his promise is therefore not within the statute of frauds as a promise to answer for the debt of another, that is, for the debt of the person for whose use the goods are furnished. On the other hand, if the credit is given to the person for whose use the goods are furnished or he is to be at all liable to the seller for the price, the promise of the other party to pay therefor must be in writing, as it is a promise to answer for the debt of another within the meaning of the statute."

From Barley v. Sameth (W. Va.) 145 S. E. 821, we quote:

"The vital and controlling inquiry upon this evidence was, to whom did the plaintiff extend credit or upon whom did he rely, as the real debtor for payment? The general rule, of course, is well recognized that it is a collateral and not an original promise that is within the statute of frauds requiring a promise to answer for the debt default, or misdoing of another to be in writing, in order to fix liability on the promisor. It is well understood from the decisions, also, that. the obligation is original if the promise is made at the time or before the debt is created, and credit is solely given to the promisor, but collateral if the promise is merely superadded to the promise of another. to pay the debt, he remaining primarily liable."

In the Oregon case, Masters v. Bidler, 198 P. 912, 199 P. 920, it is stated:

"The determination of whether a promise is an original promise, as distinguished from a collateral one, depends upon whether credit is extended solely to the promisor, or whether the indebtedness is also primarily the indebtedness of the third person to whom the consideration moves. If credit is given solely to the promisor. it is an original promise and not within the statute of frauds; but if any credit be given to the third party. the defendant's promise is collateral and must be in writing. Nor does it matter upon which of the two parties the plaintiff principally depends for payment. so long as the third party is at all liable to him to do the same thing which the defendant has engaged to do. Mackey v. Smith, 21 Ore. 598, 603, 28 P. 974; Allen v. Leavens. 26 Ore. 164, 168, 37 P. 488. 26 L. R. A. 620, 46 Am. St. Rep. 613; Slade v. Utah Construction Co., 57 Ore. 525, 534, 112 P. 433; Hurst Hardware Co. v. Goodman, 68 W. Va. 462, 69 S. E. 898. 32 L. R. A. (N. S.) 598, Ann. Cas. 1912B, 218; Johnson v. Bank. 60 W. Va. 320, 55 S. E. 394, 9 Ann. Cas. 893; Swaboda v. Throgmorton-Bruce Co., 88 Ark. 592, 115 S. W. 380; Welch v. Marvin, 36 Mich. 59; note in 126 Am. St. Rep. 492: note in 15 L. R. A. (N. S.) 215, 226; 20 Cyc. 180; 23 R. C. L. 1271; 25 R. C. L. 487, 489: 12 Ency. of Ev. 9; Browne on Statute of Frauds (5th Ed.) chap. 197."

In the case Waldock v. First Nat. Bank, 43 Okla. 348, 143 P. 53, we find:

"Where money is loaned or goods sold to R. for his use and benefit, and credit is extended to R. and W. jointly, or if any credit is extended to R., W.'s promise to pay is collateral, and comes within the statute of frauds, unless it be in writing."

Plaintiff's petition alleges:

"That on or about the 15th day of September, 1928, the defendant, W. C. Abrams, advised this plaintiff that he had formed a corporation known as the United Motor Company of which he was president, and that said United Motor Company desired to purchase used automobiles from this said plaintiff, at which time the said plaintiff, through its duly authorized agent, J. T Forster, advised the said W. C. Abrams that they could not accept the account of the said United Motor Company, but did orally agree with the said W. C. Abrams as follows: That said W. C. Abrams would individually purchase said used cars, together with the said United Motor Company, and that the said W. C. Abrams would be personally liable for, and pay up to the sum of $1,500 for any indebtedness that may accrue, being due and unpaid to the said plaintiff from the said defendants, and that said used cars and other materials and wares were to be purchased by or through the said United Motor Company."

It is also alleged that as further security of the account, the United Motor Company executed to the plaintiff its promissory notes, given at various times between June 1, and August 31, 1929, for an aggregate sum of $1,740, and it is alleged that there is due on said notes the sum of $1,952.07 with interest thereon at the rate of 8 per cent. per annum until paid.

A copy of one of the notes is attached as an exhibit to the petition and speaks for itself. It is signed by the United Motor Company alone and is in the usual form— an unconditional promise of the maker to pay a definite sum of money to the plaintiff—and recites the consideration to be in payment of a Buick sedan and provides:

" * * * That failure to pay this note when due shall mature all notes this day given by the undersigned in part payment for said property, and it is further agreed that upon default in the payment of this note the holder of the same shall be authorized to take possession of said property and to sell the same in payment for the indebtedness thereon."

There also appears on the note the following:

"Mortgage Filed. All other notes are iden-

tical with the above copy with the exception of the date, amount and date due, which is shown in petition."

It is apparent, from the face of the petition, that the United Motor Company was the primary and real debtor, as evidenced by its written, unconditional promise to pay the purchase price of cars, to be purchased by or through it, and that Abrams was to pay said debt up to $1,500 in the event only that the purchase price was "due and unpaid"; in other words, that W. C. Abrams was a guarantor only, and that such guaranty, being oral, imposed no liability on him. The description of the notes as further security cannot change their legal effect. A note is not security.

The court in its ruling upon the demurrer took the foregoing view of the facts alleged in the petition, for it could not have sustained it otherwise. That credit was extended by plaintiff to the United Motor Company is a necessary legal conclusion from the facts pleaded, and if so, Abrams' alleged promise was collateral.

The plaintiff's intention to look to the United Motor Company for the purchase price of the cars is manifested by the fact, as shown by the record, and which estops it from claiming the contrary, that when the demurrer of Abrams was sustained, it immediately moved for judgment against the United Motor Company in its favor for the entire amount sued for, and such judgment was rendered upon its motion.

The second assignment of error is predicated on the claim that Abrams' motion to strike plaintiff's amended petition was 23 days after the date of filing, without leave of court, and that "a pleading filed out of time without permission or agreement is a nullity." But a motion to strike a paper from the files is in no sense a pleading, and is not recognized as such under our statute. Section 264, C. O. S. 1921 (section 197, O. S. 1931). If the plaintiff was entitled to a default for want of a plea to its amended petition, it did not ask for it, nor was Abrams adjudged to be in default. It cannot be assumed that the court would have made such an order if it had been asked for, for it heard the argument of counsel for both parties on Abrams' motion to strike the amended petition and sustained it, and which, in effect, was a denial of plaintiff's right to have it stricken. The only question which could in any way be pertinent in this connection is the ruling of the court on Abrams' motion to strike the amended petition, and which

the plaintiff urges in his third assignment of error.

This assignment is postulated on the assumption that the amended petition was properly filed, and presented an issue as to Abrams' liability as upon an original promise. But whatever rights plaintiff may have had to amend his original petition after the demurrer to it was sustained, he lost that right by taking judgment on the petition against the United Motor Company, which was necessarily an admission that it had a cause of action against it on its notes as an original promise to pay the purchase price of the cars, and was an acceptance of and an acquiescence in the judgment and ruling of the court that the alleged agreement of Abrams was a guaranty only.

By the record already made, standing unchallenged, the question proposed by the amended petition had already been adjudicated, for as we have said, the allegation in the original petition, as construed by the court in sustaining the demurrer, was that the United Motor Company was the primary debtor and that W. C. Abrams was a guarantor, which agreement of guaranty, being oral, imposed no liability on him in respect thereto. Plaintiff did not stand upon its petition and appeal from this ruling, but recognized and accepted it by taking a default judgment against the United Motor Company alone for the full amount of its indebtedness. That closed the door to any further litigation between the plaintiff and Abrams.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS and GIBSON, JJ., concur.