## GENERAL SECURITIES CO. v. SUNDAY SCHOOL PUB. BOARD, INC.—125 S. W. (2d) 160.

Middle Section.  Dec. 10, 1938.

Petition for Certiorari Denied by Supreme Court, March 4, 1939.

W. B. Marr, Albert A. White, and Shelton Luton, all of Nashville, for plaintiff in error.

Norman Farrell, of Nashville, for defendant in error.

FELTS, J. These three suits were brought by the General Securities Company against the Sunday School Publishing Board, Inc., in the Court of General Sessions to recover on three notes for $500 each. That court rendered judgments for plaintiff. Upon appeal to the Circuit Court the cases by consent were tried together. There the verdicts and judgments were in favor of defendant, and plaintiff appealed in error.

The issue was whether plaintiff had notice of defendant's equities or defenses against the notes at the time plaintiff purchased them; and each of the seven assignments of error present certain phases of this controversy.

The defendant Sunday School Publishing Board, Inc., is a corporation, engaged in publishing Sunday School periodicals and literature for the Negro Baptists in the United States. Its publishing house is a large five-story building, located on the corner of Fourth Avenue and Cedar Street in Nashville. On July 8, 1935, defendant made a contract with J. E. Penn, doing business as the Penn Electrical Company, to do certain repair work on the elevators in this building. The contract was in writing, and particularly described the work to be done, fixing a time limit of sixty days within which the work was to be finished. The price for the work was $5,000. At the time the contract was made defendant made one note of $1,000 and eight notes of $500 each, payable to the order of Penn Electrical Company, and delivered them to J. E. Penn. These notes were negotiable in form and contained no reference to the contract. At the time they were delivered to Penn it seems to have been the understanding between him and Dr. A. M. Townsend, Secretary of the Board, who handled the matter for it, that Penn would discount the

notes, or some of them, to enable him to raise the money with which to obtain the materials and labor required for the work.

Penn discounted three of the $500 notes to the Nashville Savings & Loan Corporation, one on July 10, 1935, another July 17, and the third July 20. Two of these matured October 6, 1935, and the third October 16, 1935. These three notes were paid and are not now involved.

The other six notes Penn discounted to the plaintiff, the General Securities Company. One of these was the $1,000 note and the other five were for $500 each. This $1,000 note and two of these $500 notes were purchased by plaintiff on September 9, 1935. This $1,000 note matured October 6, 1935, one of these $500 notes purchased September 9, 1935, matured October 16, 1935, and the other January 4, 1936. These three notes have been paid and are not now involved.

The notes which are involved are the three last maturing, their maturity dates being January 4, January 24, and February 4, 1936, and all being for $500 each. Plaintiff purchased these notes on September 27, November 16, and December 24, 1935, all of them being properly endorsed by the payee, the Penn Electrical Company by J. E. Penn. Plaintiff paid Penn $470 each for two of them and $450 for the other one.

██ ██ Before plaintiff had purchased any of the notes, Penn had breached his contract, which formed the consideration for the notes. On September 8, 1935, the time limit of sixty days for completing the work had expired and the work had not been completed; and it had begun to appear that Penn was not going to finish the work at all. He did abandon it about February 6, 1936, leaving much of it unperformed and leaving unpaid bills for labor and materials. H. G. Ballou, who was employed on the work by Penn, has a labor claim for $710, on which he has brought suit in the Chancery Court to enforce his lien against defendant's building; and it is shown that the reasonable costs of completing the work as called for in the contract would be $1,378 for materials and $600 for labor, making defendant's claim against Penn much more than the amount of the three notes in suit; so that defendant would have a good defense against the notes in his hands or in the hands of plaintiff, if it is not a holder in due course. Code, sec. 7382; Hight v. McCulloch, 150 Tenn., 117, 126, 263 S. W., 794; Frazier v. Galbraith, 3 Tenn. App., 302; Davis v. Union Planters N. B. & Tr. Co., 171 Tenn., 383, 385, 103 S. W. (2d), 579. And plaintiff is not a holder in due course if, before purchasing the notes, it had actual knowledge of defendant's equities or defenses against them. Code, secs. 7376, 7380.

Whether it had such knowledge was the issue below. On the trial plaintiff put the three notes in evidence and rested. Thereupon defendant introduced its witness, Dr. A. M. Townsend, the Secretary

of the Sunday School Publishing Board, who testified that on the 8th or 9th of September, 1935, he was called on the telephone at his office by some one who said that he was Mr. Wood of the General Securities Company, and that the company had purchased from Penn two of the Board's notes, the $1,000 note and one of the $500 notes, and he desired to know from the witness whether the notes would be paid at maturity. Townsend told him those two would be paid, but explained to him that those notes and the others given Penn had been given according to a contract by which Penn was to do the work on the elevators and that Penn "was not carrying out the contract according to the specifications" and the Board had "certain equities in the Penn contract that would have to be satisfied" before the Board would pay any more of the notes; and Townsend advised Wood not to purchase any more of the notes until he had his "okey" for the purchase, and he stated that Wood said he was "going to call me before he would buy any more of the notes."

This testimony of Townsend was objected to by plaintiff upon the ground that he had not identified Wood's voice and. there was not sufficient identification of the person calling him. The trial judge overruled this objection, admitted the evidence conditionally, but stated he would later exclude it if it was not "connected up."

Witness Townsend then introduced certain correspondence between plaintiff and defendant, which consisted of (1) a letter from plaintiff to defendant, dated October 21, 1935, signed by "L. M. Wood, Manager," requesting payment of the $1,000 note due on October 6, and of the $500 note due October 16; (2) a letter from plaintiff to defendant, dated October 28, 1935, signed by L. M. Wood, Manager, requesting payment of another $500 note due October 26; (3) a letter from plaintiff to defendant dated October 31, 1935, written by L. M. Wood, Manager, requesting defendant to disregard the letter of October 28, because plaintiff had made a mistake as to the maturity of the note; (4) a notice post-marked December 24, 1935, that defendant had purchased two more of the $500 notes; and (5) defendant's reply to this notice, the reply being written by Dr. Townsend, Secretary, dated December 26, 1935, and being as follows:

"General Securities Company, a thousand and one, Nashville Trust Building, Nashville, Tennessee. Gentlemen: We have your notice postmarked December 24, that you have purchased and are now the owner of one note of $500 made payable to the order of Penn Electric Co., and due January 27, 1936.

"We hope you recall that we advised that you would not accept or purchase this note without my okey.

"We note that you have notified us also of a note of $500 payable to the Penn Electric Co., that will fall due January 18, 1936, and that you accepted this note also without my okey.

"These notes were issued on a conditional contract and that is why we made this request of you."

The witness Townsend also said that the foregoing letter was in confirmation of what he had told Mr. Wood back in September about not purchasing the notes without the witness's okey.

The witness was then allowed to introduce the contract before the jury and to detail its breach by Penn. Thereafter defendant introduced the witnesses E. L. Douglas, Secretary of the Nashville Savings & Loan Corporation, who testified that that corporation purchased three of the notes and that before doing so he called Townsend about the notes; and Ballou, who testified as to his claim for $710 against defendant, the suit thereon to enforce the lien, and the breach of the contract by Penn, giving a detailed estimate of the cost of labor and materials required to complete the work according to the contract. Thereupon defendant rested.

Plaintiff then moved to exclude the testimony of Townsend and Ballou upon the ground that it was a holder in due course and its rights could not be affected by such testimony. The court overruled this motion.

Defendant then introduced Wood as its witness. He stated that he was Treasurer and General Manager of the General Securities Company, and had acted for it in all the transactions relating to the purchase of the notes. He denied that he had any telephone conversation with Townsend on or about September 8 or 9; but stated that, after buying the three notes on September 9, he personally went to Townsend's office about September 12 to advise him of plaintiff's purchase of the notes and to tell him the notes could not be renewed or extended but would have to be paid at maturity. Wood, however, admitted Townsend told him the notes had been given "for work that was being done on the elevator," which had not been completed; that Townsend asked him to call him "before we purchase the next note;" and that he agreed to do this. And he stated he did call Townsend before buying "the next note," but did not call him before buying the last two notes because Townsend's request did not apply to these two, but was limited merely to "the next note."

As stated, all plaintiff's assignments of error present various aspects of the controversy as to whether plaintiff is a holder in due course. The first assignment complains of the admission of the evidence as to the telephone conversation testified to by Townsend, the second complains of the admission of the contract in evidence, the third complains of the admission of the evidence of Townsend and Ballou as to Penn's breach of the contract, the fourth complains of the. admission of the evidence as to Douglas having communicated with Townsend before purchasing the notes for the Nashville Savings & Loan Corporation, the fifth complains of the admission of the testi-

mony of Ballou as to Penn's failure to pay for labor and materials, the sixth complains of the court's overruling plaintiff's motion for a directed verdict, and the seventh complains of the overruling of plaintiff's motion for a new trial.

We think there was no error in admitting the evidence as to the telephone conversation. In 1 R. C. L., p. 477 it is said:

"Communications through the medium of the telephone may be shown in the same manner, and with like effect, as conversations had between individuals face to face. But the identity of the party against whom the conversation is sought to be admitted must be established by some testimony, either direct or circumstantial; to hold parties responsible for answers made by unidentified persons opens the door for fraud and imposition. Slight circumstances will suffice for this purpose, however; and in case of conversations about business affairs the rule seems to authorize the admission of the evidence without preliminary proof directed at identification of voice."

See also Annotation, 71 A. L. R., 5, 7, 36-39; 22 C. J., 193.

Though Townsend could not identify Wood's voice, we think the circumstances proved, the correspondence and the admitted fact that Wood was the only person who acted for plaintiff in the matters here involved, constituted sufficient identification to justify the admission of the telephone conversation.

This, we think, was sufficient to take to the jury the question whether plaintiff, before purchasing the notes, had actual knowledge of defendant's equities or defenses against them; and this being so, all the evidence the admission of which is complained of was rightly allowed to go to the jury except that of Douglas as to his having called Townsend before buying the notes. But plaintiff can not urge this as error because it laid no basis therefor in its motion for a new trial and because this assignment fails to quote the substance of this evidence. All the other evidence was material to enable defendant to present its defenses against the notes. It follows, we think, from what has been said above that plaintiff's motion for a directed verdict was properly denied.

All the assignments of error are overruled, and the judgment of the circuit court is affirmed. Plaintiff and the surety on its appeal bond will pay the costs of the appeal.

Faw, P. J., and Crownover, J., concur.