## PICKARD v. BERRYMAN.—142 S. W. (2d) 764.

Western Section.   July 14, 1939.

Petition for Certiorari Denied by Supreme Court, December 8, 1939.

L. E. Burch, Jr., of Memphis, for complainant-appellee.

S. S. Margolin and A. E. Weinstein, both of Memphis, for defendant-appellant.

ANDERSON, J. The bill in this cause was filed by Lewis Pickard, Jr., a minor, by his next friend, to recover from the defendant, Robert A. Berryman, the sum of $500, which he alleges his father had lost in a game of chance conducted by the defendant and his servants. The suit is authorized by Code, sections 7814 and 7815. The answer denied the material allegations of the bill. The case was tried on depositions, and the chancellor awarded a recovery for the sum of $485. The defendant appealed.

The record contains no finding of fact by the chancellor, but the decree recites "that from a preponderance of the evidence and from inferences fairly to be drawn therefrom that heretofore, to-wit, in December, 1936, the defendant won and collected from Lewis Pickard the sum of $485.00 in a game of chance."

There seems to be no controversy about the sufficiency of the evidence to show that the complainant's father lost the sum mentioned at the time and place contemplated by the chancellor's decree. The contention is that there is no evidence to warrant the conclusion that the defendant had any connection with the game of chance in which the loss occurred.

The proof consisted solely of the depositions taken on behalf of the complainant. Although the record does not so indicate, it is asserted in the briefs that one of these, not having been read by the complainant, was read by the defendant, the latter offering no other or further evidence. In any event, the defendant did not give his deposition. This becomes important in connection with the question hereinafter discussed of whether, under the circumstances shown, the complainant may rely upon an inference unfavorable to the defendant to be drawn from that fact.

Although not material, it is shown by way of background that the complainant's mother and father are divorced, the mother now living in Chicago and the defendant in Memphis. They had lived together in Memphis as man and wife for about three years. During that time the father gambled away several thousand dollars, representing a part of the proceeds of property left to the mother by a relative. In the course of three days in December, 1936, he lost the sum of $485 in the dice game, with which we are here concerned, that was being operated in a hotel room in Memphis. This was a "double room," and appears to have been equipped with gambling apparatus, including a dice table and roulette wheel. The dice game was conducted by operatives referred to as "dealers," with or against whom the patrons appear to have played. There were three of them, one "to call the dice," referred to as a "stick man" and "two men in there to pay off if you would win." The defendant is not shown to have participated in the dice game in which the complainant's father played on the occasion in question, but he was "in and out" of the room while it was going on. He was seen, however, to operate the roulette wheel on one occasion and to instruct a patron "about how to play it."

Shortly after the complainant's father had lost all of his money, he asked one of the dealers for a loan of $25. Whereupon, according to Pickard's testimony, the dealer "called (over the telephone) Mr. Berryman out at his tourist camp and asked him if they should let me have $25.00, and he said, 'No, let me have $15.00' over the telephone." He testified that "I heard the number called and heard them ask for Mr. Berryman, and under that telephone call they gave me $15.00. I asked for $25.00 and received $15.00."

A few weeks thereafter, Pickard sent the defendant a telegram from Jacksonville, Florida, reminding him that "I have lost some money" and stating that "Would appreciate it if he would let me have $15.00." Receiving no reply, Pickard requested the telegraph company to trace the message and ascertain if it had been delivered to the defendant. This was done by means of what is referred to as a "service call." The result was a report that the message had been delivered to the defendant, and "Will reply as soon as possible." Still no reply was received and another service message was sent, which resulted in a report that "said no answer." There was no objection to the evidence concerning this transaction.

Both before and after the occasion here in question, Pickard patronized a gaming establishment located across the street from the hotel, over what is known in the record as Burke's Clothing Store. These premises, consisting of the second floor of a building located at 85 South Second Street in Memphis, are shown at said times to have been occupied by the defendant under a written agreement dated December 7, 1936, whereby he rented them from

month to month. At times the defendant himself operated the dice game conducted in this place, at which Pickard also played and lost; at other times it was operated by the same "dealers" who were operating the game in the hotel on the occasion here in question.

One witness, also a patron of these games, testified that when the game was being operated "up over Burke's Store" none was being conducted in the hotel room and vice versa; that "I would say it (the game) moved back and forth two or three times to my knowledge" but the same "dealers" worked in both places. The same witness testified that he had seen the defendant "get behind the table and take money from the dealers," speaking with reference to the game while it was being conducted over Burke's Store. This testimony was elicited on cross-examination by a question, "Have you ever seen him (the defendant) gamble or operate a table up there?"

Resolving in favor of the defendant the doubt as to whether, with respect to some of the questions sought to be raised, there has been a sufficient compliance with the rules to require a disposal of them, we proceed to consider those we deem material to the conclusion reached.

The first of these is with respect to the competency of the above-quoted testimony of Pickard concerning the telephone conversation between one of the operatives or dealers of the game in the hotel room and the defendant, that resulted in a loan to Pickard of $15.

This evidence was brought out on cross-examination during the taking of Pickard's first deposition. His deposition was taken the second time and upon this occasion he related substantially the same conversation. With respect to this testimony, the chancellor sustained the objection of the defendant to so much of it as related to what the dealer reported to the witness that the defendant had said over the phone, and admitted the portion of the testimony to the effect that the dealer said he was going to call the defendant, and that upon the phone connection being made he asked for the defendant. The ground of the objection to this testimony as first brought out on cross-examination in the course of Pickard's first deposition was that "This is an opinion, or inference drawn by the witness, and is an effort to predicate an inference upon an inference, which is contrary to the rules of evidence."

If the evidence were in fact inadmissible it was not so upon this ground, and this alone would dispose of the question made in this court with respect thereto. But it is at least doubtful if the objection was good on any ground. The admissibility of telephone conversations is the subject of exhaustive annotations in 71 A. L. R., 5, et seq., and 105 A. L. R., 326, et seq. The question, in a different aspect, has also been dealt with by the Middle Section of this court in the case of General Securities Co. v. Sunday School Publishing

Board, 22 Tenn. App., 590, 125 S. W. (2d), 160; see, also, Wigmore on Evidence, Vol. 1, Sec. 669 and Vol. 4, Sec. 2155.

However, in the present case it is unnecessary to pass upon the merits of this question. The defendant is in no position to make it, for the reason that the answer of the witness containing the testimony objected to was directly responsive to a question propounded by the defendant's own counsel on cross-examination. So, all other questions aside, the defendant, having himself elicited this testimony, cannot be heard to complain of its admission. Cartwright v. Smith, 104 Tenn., 689, 58 S. W., 331; Hughes v. Whitaker, 4 Heisk., 399, 402.

The same thing is true of another portion of Pickard's testimony, to which objection was made. Defendant's counsel, after bringing out on cross-examination that the defendant had not participated in the game in which Pickard had lost his money; that he had never asked Pickard to come to the room in the hotel in which the game was conducted; and that Pickard did not know whether the room was rented in defendant's name or not, asked, "Then why do you state that you lost money to Mr. Berryman, Mr. Pickard;" and to this inquiry the witness responded, "Because I shot dice with Mr. Berryman when he was running the dice game over the Burke Clothing Store and I knew not the name but I knew the face of every dealer that Mr. Berryman had working for him and the dealers in the room in Hotel Peabody were the same men, and they said they were running the game for Mr. Berryman."

If the defendant's counsel, after having developed that the witness had no personal knowledge of the matter, desired to go further and have the witness explain the reason for his conclusion that the defendant was the recipient of his money, he was, at least in the absence of an objection by complainant, at liberty to do so, but, having done so, he is in no position to now say that the testimony thus elicited is incompetent.

The complainant took the deposition of a real estate agent, who filed as an exhibit a written agreement whereby the defendant rented the second floor of the building known as Burke's Clothing Store. Objection was made to the "filing a copy of the contract," referring to this rental agreement, on the ground that it had no bearing on the issues. Complaint is made of the action of the chancellor in overruling this objection.

There is involved in this contention the distinction between the principle of admissibility and that of proof. Where the former is under consideration, the question is whether the circumstance is to be considered at all and not whether it suffices for a demonstration. See Wigmore on Evidence, Vol. 1, Secs. 12, 28, 29, 34.

Considered in the light of the other circumstances, hereinafter specifically referred to in connection with our conclusion as

to the sufficiency of evidence to support the decree, we think it was competent to show that the defendant was in control of these premises, as a circumstance bearing on the ultimate question of his connection with and relation to the game in which Pickard lost the sum recovered.

Moreover, the filing of the rental contract became immaterial because, apart from the written agreement, the fact that the defendant had rented the premises and occupied the same from December 7, 1936, until November, 1937, otherwise appeared from the uncontradicted testimony of the real estate agent, to which no objection was made. See Looper v. Bell, 1 Head, 373; Reagan v. McBroom, 164 Tenn., 476, 51 S. W. (2d), 995.

Complaints are made with respect to the admission of certain other evidence introduced over the objection of the defendant, but these need not be considered because the evidence involved is not material to the conclusion we have reached.

It is next very earnestly contended that, since the evidence relied upon to support the decree is purely circumstantial, the facts and circumstances must not only be consistent with the theory of liability "but inconsistent with any other reasonable theory."

From a practical standpoint this seems to be the equivalent of a contention that the complainant is required to make out his case beyond a reasonable doubt. It has been many times held that this rule of criminal law has no application to a civil case. Ballinger v. Mutual Life Ins. Co., 167 Tenn., 367, 69 S. W. (2d), 1090. See, also, Pierce v. Pierce, 174 Tenn., 508, 127 S. W. (2d), 791, and cases cited.

In support of his contention we are referred by the defendant to certain expressions of this court. In reply to this it is sufficient to say that if there was ever any doubt about the correct rule, it was definitely set at rest by the Supreme Court in the recent case of Bryan v. Ætna Life Ins. Co., 174 Tenn., 602, 130 S. W. (2d), 85, 88. In that case, after pointing out the difference between the rule in civil and in criminal cases, the court said: "The general rule is that it is sufficient, in a civil case depending on circumstantial evidence, for the party having the burden of proof to make out the more probable hypothesis and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion." Citing 23 C. J., 49; Jones Com. on Evidence (2 Ed.), Vol. 1, Sec. 12.

It was further said that the court in Marquet v. Ætna Life Ins. Co., 128 Tenn., 213, 228, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677, distinctly recognized "that circumstances which usually attend the essential fact may be taken as establishing that fact in a civil case."

Prior to that decision it had been pointed out in Ballinger v. Mutual Insurance Co., supra [167 Tenn., 367, 69 S. W. (2d), 1092], a case of direct evidence, that contrary to the rule in criminal cases, in a civil suit the "jury may recognize that there is a preponderance of evidence, and on that they may base their verdict" even though they may not be convinced that the facts are that way. See, also, Pierce v. Pierce, supra.

We apprehend that this is no less true of a circumstantial evidence case, whether tried before a court alone or with the aid of a jury, than of one involving direct evidence.

So, in a civil case, whether it be one of direct evidence, one of circumstantial evidence, or one involving both, the question is, where is the preponderance of the evidence upon the determinative issue or issues; and the verdict, or judgment, is to be in accord with the answer to this question.

Of course, in a circumstantial evidence case, if the testimonial evidence relied upon to establish the material circumstances is conflicting, the triers of fact, whether court or jury, must first resolve this conflict, and in doing this, they are to be guided by the usual rules; and, having done it, it is their province to draw legitimate inferences from the circumstances as found by them to be true, and then to determine from the inferences so drawn where the prepondrance of the evidence lies. That is, if the preponderance of the evidence thus arrived at is in favor of one of two or more given hypotheses, then that theory is to be regarded as the more probable and the judgment or verdict rendered accordingly.

The complainant insists that in support of the decree he is entitled to have considered an inference unfavorable to the defendant to be drawn from the fact that the latter did not testify. To this the defendant responds that he was not required to testify until the complainant made out a prima facie case, and refers us to 22 C. J., section 57, p. 123 (see, also, Davis v. Auto Tire, etc., Co., 141 Tenn., 527, 213 S. W., 914); that this, complainant has failed to do; and that, therefore, his own failure to testify raises no unfavorable inference against him.

The rule invoked by the complainant is stated in Western Union Tel. Co. v. Lamb, 140 Tenn., 107, 111, 203 S. W., 752, 753, as follows: "Another rule of evidence, which is often resorted to to explain incomplete knowledge, is that where the evidence tends to fix liability on the defendant, and if he has it in his power to offer evidence to rebut the unfavorable inferences which the proof tends to establish, and neglects or refuses to offer such proof, it may be inferred from the facts shown that the fully developed evidence would establish liability upon his part. Standard Oil Co. v. State, 117 Tenn., 618, 100 S. W., 705, 10 L. R. A. (N. S.), 1015; Fisher v. Insurance Co., 124 Tenn. [450], 483, 138 S. W., 316, Ann. Cas., 1912D, 1246; Ann. Cas., 1913A, 203."

█ The defendant's contention requires a consideration of what is meant by the phrase, prima facie case. 1 Wigmore on Evidence, Sec. 290, p. 597. As Dean Wigmore points out (referring to trials before juries), this is used in two senses; one in the sense that if the opponent produce no evidence, the proponent is entitled to a judgment or decree; and the other, that he has merely produced a sufficiency of evidence to have his case submitted to the jury, and this, of course, is quite a different thing from a case so far made out as that a decree or judgment must follow as a matter of right. Wigmore on Evidence, Vol. 5, Sec. 2494. Stated somewhat differently, in the first sense when used in connection with jury trials it means in this State that, nothing to the contrary appearing, the proponent has supplied from unimpeached and credible sources the quality and quantum of uncontradicted evidence necessary for a decree or judgment in his favor. In the other sense, it means merely that his evidence, assuming it to be true, is sufficient to prevent his suit being dismissed, as on a directed verdict, and to require the case to be submitted to the triers of fact for the purpose of having them pass upon the credibility of the witnesses and the sufficiency of the evidence. Western Union Tel. Co. v. Lamb, supra, and cases cited. See, also, Brock v. Metropolitan Life Ins. Co., 156 N. C., 112, 72 S. E., 213; State v. Wilkerson, 164 N. C., 431, 79 S. E. 888.

When the courts say that the evidence "tends to show" or "tends to fix" liability, instead of saying that it "shows" or "fixes" a party's responsibility, they do so in deference to this distinction.

In the connection here under consideration, the phrase "prima facie case" is used in the second sense, and not in the first sense, for, otherwise there would be no need at all for drawing an inference from the failure of the opponent to testify, because the proponent would be entitled as a matter of right to a favorable decree without it.

The distinction between the two meanings given that phrase becomes significant mainly in jury trials but, notwithstanding some expressions to the contrary, we think it exists, theoretically, at least, in cases tried before the court without the intervention of a jury, and the question under consideration involves an instance when it arises and must be borne in mind in such proceedings.

█ In a non-jury case, when the evidence adduced by the proponent tends to fix liability on his adversary in the sense that under the practice prevailing in this state the case would have to be submitted to the jury, if there were one, even though it falls short of the quality and quantum that would entitle him to a decree or judgment as a matter of right, it is sufficient to bring into play the rule that if it be within the power of the defendant to rebut the unfavorable inferences from the evidence offered by his opponent and he fail to do so, the court, generally speaking, may infer from

the facts shown that the fully developed evidence would tend to establish liability. For instance, suppose a case of circumstantial evidence such as Western Union Tel. Co. v. Lamb, supra, tried before the court without a jury, where the circumstances as shown by the plaintiff's evidence are reasonably susceptible of two different conclusions, both logical, as distinguished from conjectural, one that would render the defendant liable, and the other not. In this situation, the judge, as the trier of fact, might not be warranted at that stage of the proceeding in choosing between the two views, but he would be justified in concluding that the evidence so far tended to fix liability upon the defendant as that an unfavorable inference was to be drawn from his failure to offer pertinent evidence shown to be within his control, and in using this inference along with the other evidence in the case to tip the scales between the two possible conclusions.

This we understand to be the rationale of the case of Western Union Tel. Co. v. Lamb, supra, and we perceive no good reason why, in a situation comparable to that stated it is not as applicable to a non-jury case as to one tried before a jury. Compare Dunlap v. Haynes, 51 Tenn. (4 Heisk.), 476, and Citizens Bank v. Langford, 6 Tenn. App., 238.

There may be other instances involving somewhat different situations in which the rule would apply in non-jury trials, but the one given will suffice to illustrate what we have in mind as applied to the circumstances before us.

In the present case, the ultimate inquiry is what relation, if any, did defendant bear to those operating the game of chance in which complainant's father lost his money? In short, were the operators the servants of defendant with respect to that transaction? This fact, like any other, was susceptible of proof by circumstantial evidence. Western Union Tel. Co. v. Lamb, supra; Kenner v. City Nat. Bank, 164 Tenn., 119, 133, 46 S. W. (2d), 46.

In considering and weighing circumstantial evidence, which we must now proceed to do in the case before us, it is sometimes helpful from a clarifying standpoint to regard the circumstances found to be proven as corresponding to witnesses on the stand, and the inferences to be drawn therefrom as corresponding to the testimony of such witnesses. In short, the proven circumstances, instead of the living witnesses, may be sometimes helpfully regarded as speaking, and the inferences to be drawn therefrom as what they say.

The circumstances shown by undisputed evidence that tended to fix liability on the defendant are these: The defendant was the occupant and in control of the premises over Burke's Clothing Store, in which a similar gambling game was conducted. At times the defendant operated this game himself and at others it was operated by the same "dealers" who afterward conducted the one

in the hotel, in the course of which the complainant's father lost his money. At the game over Burke's Clothing Store, the defendant had been seen exercising ownership over the equipment and control over the dealers, in that he would "get behind the table and take money from the dealers." He was also seen, during the course of the game in which the money was lost by complainant's father, to operate the roulette wheel that was part of the gaming equipment in the hotel room and to instruct a patron "about how to play it."

The conduct evidenced by these circumstances is manifestly such as usually attends the existence of a right of supervision and control of such an activity, and so, nothing else appearing, the conclusion that the relation of master and servant existed at the time with respect to the operation over Burke's Clothing Store was tentatively warranted as a legitimate inference to be drawn from the circumstances. Marquet v. Ins. Co., 128 Tenn., 213, 225, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677; Bryan v. Ætna Life Ins. Co., supra.

The foregoing circumstances, taken in connection with the testimony of one witness to the effect that the game "moved back and forth two or three times" between the hotel room and the premises over Burke's Clothing Store, and that "the same dealers worked in both places," and the further testimony relative to the telephone conversation above mentioned, were sufficient to show prima facie in the sense above referred to, a connection on the part of the defendant with the particular game in which the complainant's father lost his money, and since they were unexplained, the conclusion that he was the master of those operating that game is at least one logically probable hypothesis. It having been clearly within his power to rebut such an inference and he having failed to do so, the chancellor was warranted in concluding, and so are we, that the facts within the defendant's knowledge and withheld by him, if fully developed would have established such a connection with that particular game as would have rendered him accountable to complainant. Fisher v. Ins. Co., 124 Tenn., 450, 490, 138 S. W., 316, Ann. Cas., 1912D, 1246; Western Union Tel. Co. v. Lamb, supra.

In short, the unfavorable inference to be drawn from the defendant's failure to testify after the evidence had developed facts tending, to the extent mentioned, to fasten liability upon him, is the thing that renders the hypothesis furnishing the basis of liability more probable than any other to be drawn from the circumstances. It may be regarded as the evidential force that operates to tip the scales in favor of that hypothesis against any opposing one that is logically deducible from the proven facts.

It is perhaps proper to point out that in this instance the unfavorable inference drawn from the defendant's failure to testify is evidence bearing directly on the ultimate issue. This is not always

necessarily true where the rule invoked by the complainant is applicable. See Wigmore on Evidence, Vol. 1, Sec. 290, Subsec. (4), p. 597.

The result is that the chancellor's decree is affirmed at the cost of the defendant.