Marie **GUTOWSKY** & Chester E. Gutowsky,
Executors of the Estate of Assaph (Ace)
Gutowsky, Deceased, Plaintiffs in Error,

v.

**HALLIBURTON OIL WELL CEMENTING
COMPANY, a corporation, Defendant
in Error.**

No. 36519.

Supreme Court of Oklahoma.

July 19, 1955.

Brown & Verity, by Geo. L. Verity & Harry C. Marberry, Oklahoma City, for plaintiffs in error.

Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, by Ben L. Burdick, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an action on open account brought by the plaintiff, Halliburton Oil Well Cementing Company, against the defendants, Marie Gutowsky and Chester E. Gutowsky, Executors of the Estate of Assaph (Ace) Gutowsky, deceased. The parties will be referred to as they appeared in the trial court.

No question is raised as to the correctness of the account nor the performance of the labor and furnishing of the materials for which the charges were made. The sole defense was that the account was not that of the individual, Ace Gutowsky, now deceased, but rather, was the account of the Corporation, A. Gutowsky, Inc., of which Mr. Gutowsky was president and general manager. The charges made on the account were for supplies and cementing services furnished by plaintiff in the drilling of an oil well approximately 700 miles from McAllen, Texas, near a small town by the name of Matador. The well was owned by, and was being drilled by or for the corporation. Plaintiff's itemized statement of account as attached to its petition discloses some fifteen individual items charged thereon between October 12 and November 11, 1950. The supplies and services were furnished upon order of the person or persons in charge of drilling the well. The said Ace Gutowsky died in April 1951 and this action was filed against the executors of his estate, the defendants herein, on May 28, 1952. A trial to a jury resulted in verdict and judgment for plaintiff for the amount sued for, from which the defendants have perfected this appeal.

■ The first proposition presented is that the trial court erred in refusing to hear evidence or to consider affidavits of certain jurors that the jury, in considering its verdict, had not made a fair deliberation of the issues presented. Defendants admit in their brief that this court has held adversely to their contention. In the case of Wilson v. Oklahoma Railway Co., 207 Okl. 204, 248 P.2d 1014, 1020 the rule was stated as follows, together with citation of a number of earlier cases supporting it:

"Abiding on the principle of sound public policy, it has become the settled rule in this jurisdiction that a juror will not be permitted by affidavit or testimony to impeach the verdict for misconduct occurring either inside or outside the jury room."

We see no reason for disturbing the application of that rule.

■ The next proposition goes to the admissibility of testimony as to a telephone conversation which was admitted in evidence over objection and exception. The district superintendent for plaintiff testified that on October 22, 1950, he received a long distance telephone call which the telephone operator told him was from Ace Gutowsky at McAllen, Texas; that he did not know Mr. Gutowsky nor did he know the sound of his voice; that the person calling said he was Ace Gutowsky and that he would be personally responsible for material and services furnished by plaintiff in connection with the drilling of the well. This testimony was objected to by defendants on the grounds that there was nothing to show the identity of the person to whom witness talked as being Ace Gutowsky. The objection was overruled and it is here argued that its admission was error. Several cases are cited in support of that position, typical of which is that of Williamson-Halsell-Frasier Co. v. King, 58 Okl. 120, 158 P. 1142, 1143, wherein it was said:

" 'Telephone conversations, in so far as concerns their admissibility in evidence, are in the main governed by the same rule of evidence which governs the admissions in evidence of oral statements made in an ordinary conversation, except, of course, the necessity of identification of the party against whom the conversation is sought to be used. * * * Before such conversation may be received in evidence, however, the identity of the party sought to be charged therewith must be established.'

"In the application of the rule quoted it is held that the identity of the person should be established by some testimony, though the evidence may be either direct or circumstantial, as, for example, that witness was acquainted with the person talking and recognized his voice. But such identity must be in some way established."

The question then arises as to how much and what kind of proof of identity is necessary? That question has not been squarely before us, heretofore. However, under similar circumstances, the Missouri Court, in the Case of Kansas City Star Publishing Co. v. Standard Warehouse Co., 123 Mo. App. 13, 99 S.W. 765, 766, made the following statement:

"One of plaintiff's staff, who had in charge the advertising, was called up over the telephone by some one asking about the advertisement and speaking of it as one 'we are putting in.' This person gave his name as Carlisle, and on being asked what connection he had with it, replied that he was president of the company which was having the advertisement inserted in the paper. Notwithstanding Carlisle was unknown to the party, and, in consequence, there being no way for such party to identify him by voice, yet the evidence was admissible, to be given such weight as, under the circumstances, the jury thought was proper."

To the same effect was the case of General Securities Co. v. Sunday School Pub. Board, Inc., 22 Tenn.App. 590, 125 S.W.2d 160.

In the quoted case, the witness was permitted to testify relative to the telephone conversation because of the identifying conversation with the other party which was of about the same type and weight as that in the instant case. Herein, the speaker identified himself as Ace Gutowsky and also spoke intimately concerning the condition of the well being drilled, and for which the plaintiff was requested to furnish services and material. That sufficiently identified the speaker to make competent the testimony as to the further telephone conversation. The jury was properly allowed to consider it and to give it such weight as they, the jurors, might find it was entitled.

In opposition, the defendants produced a witness who testified that at the time of the alleged telephone conversation, Mr. Gutowsky was with him at the well some 700 miles away from McAllen, Texas, the origin point of the phone call; that, by reason thereof, it was impossible that the conversation occurred as testified to by plaintiff's witness. Such a controverted question of fact, however, was one for the jury to consider and determine. This it did and the verdict was for plaintiff.

At the trial, defendants requested certain instructions which the court refused to give. Error is assigned because thereof. The record disclosed that the trial court did give other instructions, covering the same issues and contentions, which adequately covered the law governing the same. As was said in the case of Cooke v. Townley, Okl., 265 P.2d 1108, 1113:

"The instructions, when considered as a whole, fairly presented the issues to the jury and it was not error to refuse defendant's requested instructions."

Defendants further contend that, in any event, they would not be liable for $1,284.13 of the judgment, which represents the sum of the items delivered to the well prior to October 22, 1950, the date of the alleged telephone call from Ace Gutowsky, and which items had been invoiced to the corporation, A. Gutowsky, Inc. With this contention we agree.

The first three items of the account sued on were of the amounts and on the dates as follows, respectively: October 12, 1950—$110; October 12, 1950—$405.23; October 21, 1950—$768.90. The invoices for these items were made to A. Gutowsky, Inc. The services and materials were furnished for the well owned by the corporation and not by the individual. All three of the items were furnished prior to October 22, 1950, the date of which plaintiff's witness testified he talked to Mr. Gutowsky and was told that he would be individually responsible for the account. Regardless of what Mr. Gutowsky said in that conversation he could not, because of the statute of frauds, be held

personally responsible for the then existing account of the corporation without a written memorandum binding him. As to charges made after the 22nd of October, his liability depended upon whether or not the credit was extended solely to Mr. Gutowsky, an individual. By proper instructions, that question of fact was submitted to the jury and found in favor of the plaintiff. A good statement of the application of the rule was quoted from the Oregon Court, by this court, in the case of Forster-Davis Motor Corporation v. Abrams, 175 Okl. 464, 53 P.2d 569, 571, as follows:

" 'The determination of whether a promise is an original promise, as distinguished from a collateral one, depends upon whether credit is extended solely to the promisor, or whether the indebtedness is also primarily the indebtedness of the third person to whom the consideration moves. If credit is given solely to the promisor, it is an original promise and not within the statute of frauds; but if any credit be given to the third party the defendant's promise is collateral and must be in writing. Nor does it matter upon which of the two parties the plaintiff principally depends for payment, so long as the third party is at all liable to him to do the same thing which the defendant has engaged to do.' "

Also supporting the doctrine is the case of Reed v. Richards & Conover Hdw. Co., 188 Okl. 452, 110 P.2d 603. Being before the 22nd of October, 1950, the date of the alleged phone call from Mr. Gutowsky, credit for the first three items of the account, as above identified, was extended to the corporation. Those items, then, are within the applicability of the statute of frauds and not enforceable against these defendants.

Much the same situation as here, was before the Florida Court, in the case of Peterson v. Paxton-Pavey Lumber Co., 102 Fla. 89, 135 So. 501. It was therein said that,

"The contractor owed the materialman a large amount of money. The materialman refused to furnish more material until he received at least a part of what was due him. The owner

guaranteed the payment of $1,000, and, it may be reasonably concluded from the evidence, agreed orally to pay for such material as should thereafter be furnished to the contractor to complete the construction, and, the plaintiff contends, also agreed to pay the remainder of the contractor's bill. If and when defendant agreed to pay for the material that should thereafter be furnished to the contractor he did not thereby assume to pay the debt of another, but assumed the initial obligation. On the other hand, if the defendant did agree to pay the balance of the indebtedness at that time due from the contractor to the materialman, this was an obligation to pay the debt of another and under the statute of frauds is required to be in writing."

The same reasoning applies here. If the plaintiff shall, within thirty days after the filing of the mandate herein in the trial court, enter a remittitur of $1,284.13 as of the date of the judgment, the same shall, as to the remainder, stand affirmed. Otherwise the judgment shall stand reversed.

It is so ordered.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, HALLEY and BLACKBIRD, JJ., concur.